BETTY H. GREY ET AL. *v.* COASTAL STATES HOLDING COMPANY ET AL.
(7963)

DuPont, C. J., O'Connell and Lavery, Js.

Argued December 8, 1989—decision released June 22, 1990

*Louis Ciccarello,* for the appellants (plaintiffs).

*Michael W. Lyons,* with whom was *John J. Bove,* and, on the brief, *Anthony E. Schwartz* and *Salvatore J. Coppola,* for the appellees (named defendant et al.).

DUPONT, C. J. This appeal arises out of an action for compensatory and punitive damages, injunctive relief and attorney's fees against the owners of three residential condominium units and against Hawkins Landing Association, Inc. (the association),[1] brought by the owners of the two remaining condominium units. The plaintiffs alleged that the defendants' units were expanded, in violation of article XIII, § 13.4, of the association's declaration and of General Statutes § 47-236 (d), when they built an additional story onto each of their units and increased the ground footage of those units. The

---

[1] Hawkins Landing was created by declaration pursuant to the Common Interest Ownership Act. General Statutes § 47-200 et seq. As used in this opinion, the word "defendants" means the defendant owners.

plaintiffs further alleged that the defendants thereby appropriated to their sole use certain common elements in which all unit owners had an interest. The trial court awarded attorney's fees to the plaintiffs in the amount of $27,000 and ordered the defendants to revise the condominium documents at their own expense to reflect the expansion of the defendants' units and to take the necessary action to reallocate the common expenses in accordance with the current square footage of the living area of each unit. The court refused to grant other damages or to require the restoration of the defendants' units to their original square footage[2] or to order the association to take all steps necessary to prevent future violations of the condominium documents. The plaintiffs appeal from that judgment.[3] We affirm.

On appeal, the plaintiffs claim that the court improperly (1) failed to determine that the upward expansion of the defendants' units was an appropriation of air space that was common to all unit owners, (2) failed to award compensatory damages in proportion to the plaintiffs' percentage interests in the wrongfully appropriated common elements, and (3) failed to conclude that the defendants were unjustly enriched by the wrongful appropriation of the plaintiffs' interests in the common elements as measured by the value of the improvements to the defendants' units.

The plaintiffs Betty H. Grey and Louis D. Grey own one unit (4E) in a five unit residential condominium, composed of four separate buildings, and known as Hawkins Landing. The plaintiff Peter Kingsbury owns

---

[2] The plaintiffs do not argue on appeal that the injunctive relief of restoration of the defendants' units to one story units should have been ordered by the trial court.

[3] The defendant owners counterclaimed, seeking specific performance of the terms of a resolution allegedly adopted by all of the unit owners, except Louis Grey, and damages, punitive damages and attorney's fees. The trial court rendered judgment for the plaintiffs on the defendants' counterclaims. The defendants have not appealed from that judgment.

one unit (4D) in the same building as the unit belonging to the other two plaintiffs. The defendants Coastal States Holding Company (Coastal States) and Alvin Farans, a partner in Coastal States, own unit 1A, and the defendant Ronald Kellogg owns units 2B and 3C. Each of the three units owned by the defendants is a separate structure. The defendant association is a non-stock corporation that manages and controls the condominium through its executive board. At the time of this litigation, Betty Grey, Kingsbury, Farans and Kellogg comprised the executive board.

The trial court found that at the time of the condominium declaration in August, 1985, units 1A and 2B were one story cottages. Prior to the declaration, Farans, acting for Coastal States, had been issued a building permit to build an addition and add a second story to unit 1A. The permit was issued on December 12, 1984, and required that construction commence within six months. On May 28, 1985, however, Coastal States filed with the town planning and zoning commission a revised set of plans that showed a one story dwelling, and it marked the original plans for two stories void. The trial court found, therefore, that, at the time of the declaration, the only construction plan in effect for unit 1A was for a single story dwelling.

The court further found that, at an executive board meeting held on May 21, 1986, Betty Grey expressed concern about Kellogg's plans to renovate unit 2B to add second and third levels. At the meeting, Farans described his plan for a second floor addition to unit 1A. The plaintiffs were unaware that Coastal States, on February 6, 1986, had been issued a building permit to construct a second story.

On May 27, 1986, Betty Grey and Kingsbury wrote a letter to Kellogg stating that they had no objection to the addition of second stories to units 1A and 2B

if the condominium documents were revised to avoid title problems. The court concluded, therefore, that Kellogg and Coastal States could reasonably have assumed that there would be eventual consent to the addition of two stories when the legal technicalities were resolved.

The court concluded that at another meeting on June 18, 1986, the parties had reached a consensus on a means of determining compensation for the air expansion into common elements and that the agreement could be reduced to writing. An agreement was drafted by the plaintiffs' attorney and signed by them. Kellogg and Coastal States refused to sign it, however, because, in addition to the agreed upon items, it provided for the payment by the defendants of the plaintiffs' attorney's fees.[4]

The court found that on June 26, 1986, the date the agreement was delivered to Kellogg, Coastal States began construction, "acting under the belief that an agreement had been reached." The court further found that Farans believed he had the right, pursuant to article VIII, § 8.1, of the declaration, to add a second story. The plaintiffs began their action against Coastal States in July, 1986.

Kellogg obtained a building permit for a small addition and a second floor to be added to unit 2B on July 8, 1986, and began construction in September, 1987. The court found that he believed that a September, 1987 dismissal of the plaintiffs' action against him was based on its merits, and therefore left him free to begin construction of a second story.

The court made a number of other relevant factual findings and drew conclusions from those findings. As

---

[4] The unsigned agreement provided that the defendants would compensate HLAI, based upon a formula, for any common elements taken.

a result of the additions, unit 1A was increased by 986 square feet of living space, representing an increase in appraised value of $182,410, and unit 2B was increased by 751 square feet of living space, for an increase in value of $138,935. The expanded footprint of unit 1A took fifty square feet of common area, an overall increase of thirty square feet and that of 2B took twenty eight square feet of common area, an overall increase of fifteen square feet.[5]

The defendants' expansions resulted in a benefit to them and a loss to the plaintiffs of their property interests. The expansion of the units took square footage of common areas and represented changes in the boundaries of those units requiring unanimous consent of the unit owners pursuant to the declaration. Because the expansions were not done with unanimous consent of the unit owners, the condominium agreement was violated. The expansions, however, were accomplished in the belief that an agreement among the unit owners had been reached, and the court, therefore, concluded that the defendants had not *wilfully* failed to comply with the Common Interest Ownership Act or the declaration and that the requested remedy of restoration was too harsh. On the basis of these findings and conclusions, the court denied the relief of restoring 1A and 2B to their original condition, and declined to award punitive damages under General Statutes § 47-278.

The plaintiffs had requested compensatory damages. They sought 40 percent[6] of the increase in the value

---

[5] The footprint of unit 1A was modified so that fifty square feet of common element was taken, but twenty square feet were "given back." The expansion to 2B took twenty-eight square feet of common element but "gave back" thirteen square feet.

[6] The four architecturally differing structures in Hawkins Landing were not originally constructed as part of a condominium. For this reason, the original square footage of each unit differed from that of the other units. Nevertheless, article IX of the declaration allocates to each unit owner an undivided 20 percent interest in the common elements of the condominium.

of units 1A and 2B. Evidence had been presented from which the court could assess the increase in the value of those units because of the additions to them. The court refused to grant damages on that basis because it found such an award was not supported by statute or case law and because § 47-212 (a) barred the award of consequential, special or punitive damages unless specifically provided for by law. The court further refused to grant compensatory damages on any other basis because the plaintiffs had not produced evidence of their actual monetary loss, of the value of any reduction in their unit ownership interest in Hawkins Landing or of the value of the common elements of which they were deprived as a result of the expansion.

The trial court was correct in finding that the defendants had violated the condominium declaration by expanding their units. It did not, however, determine whether air space was a common element. The court's memorandum of decision can be construed to imply that air space is a common element, but, in response to a motion for articulation, the court specifically refused to find that the air space above and surrounding the physical structures of units 1A and 2B constituted a common element.[7]

Because the plaintiffs, by the terms of the condominium documents, have an interest in any common elements, we must determine whether the land and air space taken were common elements. Common elements are defined as "all portions of the common interest community other than the units." General Statutes § 47-202 (4) (A); Declaration of Hawkins Landing, art. I, § 1.5. It is elementary to say that what is not a unit is a common element, if it is within the real estate owned by the condominium association. General Stat-

---

[7] The defendants do not dispute that air space may be a common element but argue that, even if such is the case, no compensatory damages or damages for unjust enrichment were due for the appropriation of it.

utes § 47-202 (4) (A). "Real property" under the act includes spaces that may be filled with air. General Statutes § 47-202 (26). In addition to land itself, the right to use the air above that land is a property interest, capable of ownership, that may be conveyed or taken in condemnation. *Transportation Plaza Associates* v. *Powers,* 203 Conn. 364, 366–67, 525 A.2d 68 (1987). Air rights have value and may be assessed or taxed by a municipality. Id., 374 n.6. Implicitly, therefore, they have a fair market value. We, therefore, hold that the air space above the condominium units in this case is a common element, as are portions of the land owned by the association on which no unit was to have been built.

Under article IX of the declaration, the plaintiffs are entitled to a 20 percent interest in common elements for each unit of the condominium they own. The plaintiffs together, therefore, held a 40 percent interest in the air space above the original condominiums as well as in the land on which no unit was to be built. Pursuant to article XI, § 11.1, and article XIII, § 13.4, of the declaration and General Statutes § 47-236 (d), the unanimous consent of the unit owners was required to change the boundaries of a unit and permission of the executive board was required to change the outward appearance of a unit.

If the defendants had abided by the declaration, they would not have been able to build the second stories or to change the ground boundaries of their units. The defendants essentially appropriated air space as well as square footage of land that did not belong to them individually, but belonged to them in common with the other unit owners. The plaintiffs are, therefore, entitled to damages for the property taken from them.

General Statutes § 47-212 (a) provides that the remedies permitted under the act should be liberally admin-

istered so that the aggrieved party will be put in as good a position as if the other party had fully performed, provided that consequential, special or punitive damages may not be awarded except as specifically provided by the act or by other rule of law. The principles of law and equity, including the law of real property, apply to the provisions of the act to the extent that they are not inconsistent. General Statutes § 47-207.

General Statutes § 47-278 provides that if a provision of the declaration is violated, "any person . . . adversely affected by the failure to comply has a claim for appropriate relief. Punitive damages may be awarded for a wilful failure to comply with this chapter." The trial court found that punitive damages were not due because the defendants had not wilfully failed to abide by the declaration. The plaintiffs do not challenge this finding, and we, therefore, do not address the issue of punitive damages. The plaintiffs do, however, argue that the expansion by the defendants of the boundaries of their units without obtaining consent of all the unit owners entitled them to compensatory damages or damages for the unjust enrichment of the defendants. We agree that damages are due. The difficulty arises in the measurement of those damages.

Two possible theories of damages are unjust enrichment and compensatory damages. The plaintiffs claim that they are entitled to a proportionate share of the value of the additions to the defendants' units, on the theory that the defendants have been unjustly enriched. General Statutes § 47-212 (a), however, provides that any remedy should be aimed at putting the plaintiffs in as good a position as they would have been in had the agreement not been breached. Where there is a statutory scheme for recovery of a benefit that may also be recovered at common law, the statutory procedure must be relied upon unless it is inadequate. *National CSS, Inc.* v. *Stamford,* 195 Conn. 587, 597,

489 A.2d 1034 (1985). Thus, the appropriate remedy here would be to place the plaintiffs in the position they would have been in but for the breach. The appropriate amount of damages, therefore, relates to the value of the elements taken by the defendants. It does not relate to the value of those elements plus the value of any enhancement to them where the value of the enhancement was supplied by the defendants themselves.

There are several possible ways of measuring the plaintiffs' damages in order to put them in the position they would have been in but for the breach. The plaintiffs would have been entitled to compensation for the additional square footage of land constituting common area that the defendants converted to their exclusive use by expanding their units outward, had the plaintiffs sought such damages and introduced sufficient evidence of valuation. They would also have been entitled to compensation for the air space directly above the defendants' original units as a part of the wrongfully appropriated common elements. The plaintiffs, however, failed to introduce evidence of the value of either the air space or the square footage of land appropriated by the defendants. They would have been able, therefore, to collect only nominal damages for the appropriation of those elements in this case. *Rubin* v. *Rios,* 186 Conn. 754, 756, 443 A.2d 1273 (1982).

Another means of placing the plaintiffs in the position they would have been in had the defendants not appropriated common elements would be to award them an amount equal to any decline in the value of their own units as a result of the unwarranted changes to their neighbors' units. As the trial court properly found, however, they introduced no such evidence, and, they therefore, cannot recover anything other than nominal damages for such a decline in value.

In summary, we hold that, because the trial court found that the condominium agreement was not wilfully violated and because that finding has not been attacked on appeal, the plaintiffs here were not entitled to punitive damages. They were, however, entitled to either nominal or actual damages. Their actual damages could have been based upon the value of their proportionate shares of the air space and land taken by the defendants or upon any diminution in the value of the plaintiffs' own units as a result of the defendants' expansions. They proved neither. Even though no actual damages were proved, the plaintiffs were entitled to nominal damages because of the defendants' violation of the condominium agreement by appropriating to their private use, elements of land and air in which all unit owners had an interest. Because, however, only nominal damages were due, we decline to reverse. See *Rubin* v. *Rios,* supra.

The judgment is affirmed.

In this opinion the other judges concurred.