[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs seek to recover damages from Inner City Community Housing Corporation, an entity that purchased thirty-four of the forty-four units in a condominium project in which plaintiffs Daniel Lenhart and Jill Lenhart owned one unit and plaintiffs Robert Thomas and Lisa Thomas owned another unit.
The plaintiffs initially sued the developer of the condominium project, Chamberlain Development Corporation. The plaintiffs' claims against that defendant for breach of the condominium declaration and other claims were discharged in a bankruptcy proceeding.
Accordingly, the only claims tried to this court were the fifth and tenth counts of the complaint, as to which Inner City Community Housing Corporation ("Inner City") is the defendant.
In the fifth count, Mr. and Mrs. Lenhart claim that after they bought their condominium unit at Chamberlain Court Condominiums on Chamberlain street in New Haven, Inner City bought 34 of the unsold units. The plaintiffs allege that Inner City failed to pay common charges or expenses for its units, failed to maintain the premises, and failed to adhere to the declaration and by-laws of the condominium "in reckless and wanton disregard for the rights of the CT Page 4283 plaintiffs" and that these actions caused the plaintiffs to suffer damages and diminished the market value of their unit.
Mr. and Mrs. Thomas make the same claim as the tenth count of the complaint.
After a trial on the merits, this court makes the following findings.
The plaintiffs bought their residential units as the first units sold, and no condominium association as defined in General Statutes § 47-202(3) and § 42-243 existed between the time of their purchases and March 4, 1992. Neither the plaintiffs nor the defendant were ever charged common charges as set forth in the declaration of the condominium.
Inner City bought its thirty-four units in March 1991 and rented them out to moderate and low-income tenants. The New Haven Housing Authority or an affiliated entity bought seven units at an unspecified time and likewise rented the units out, such that all but three of the 44 units were occupied by tenants rather than by unit owners as of March 1992.
In the absence of a condominium association structure, Inner City performed some management functions, including providing garbage collection services for its tenants. The plaintiffs testified that Inner City performed little or no maintenance of areas described in the condominium declaration as common areas, and that Inner City allowed its tenants to leave disabled cars on the premises.
General Statutes § 47-278 provides that if a declarant of a condominium or other common interest community or "any other person subject to this chapter fails to comply with any of its provisions or any provisions of the declaration or by-laws" any person adversely affected has a claim for appropriate relief. In Grey v.Coastal state Holding Co., 22 Conn. App. 497, cert. denied,216 Conn. 817 (1990), the Appellate Court adjudicated an appeal in which condominium unit owners sued other unit owners for making alterations to the common elements in violation of the terms of the condominium declaration. The Appellate Court's ruling does not contain any analysis as to whether unit owners are persons subject to suit pursuant to § 47-278, and this issue may not have been specifically raised in that case; rather, § 47-278 was apparently deemed to authorize the claim. CT Page 4284
The state of the law appears to be that a unit owner has a cause of action against another unit owner for failure to comply with the provision of the condominium declaration or by-laws.
It must therefore be determined whether the plaintiffs have proven that the declaration or by-laws required Inner City to maintain the premises and whether Inner City violated any other provisions of the declaration or by-laws, as alleged in Paragraph 6 of the fifth and tenth counts of the complaint. The plaintiffs' first claim of violation, that Inner City had "failed and refused to pay common charges or expenses" was not proved. The evidence established that no common charges or fees were billed to the plaintiffs, the defendants or other unit members at any time.
The plaintiffs' next claim is that Inner City "failed and refused . . . to maintain the premises". Scrutiny of the declaration and by-laws reveals no provision requiring Inner City to maintain the premises about which the plaintiffs complained, that is, the common areas.
The plaintiffs' final claim is that Inner City failed "to adhere to the Declaration and By-laws of the Condominium." While no specific violations were alleged in the complaint, the plaintiffs testified that Inner City altered the exteriors and floor plans of certain units without obtaining permission of the Association. Section 14.1(a)(ii) of the by-laws prohibits a unit owner from changing the exterior appearance of a unit without permission of the Association.
Defendant Inner City presented no evidence to contradict the plaintiffs' testimony concerning alteration of its units to make rooms out of garages and to change the configuration of exterior doors, nor did Inner City present evidence that it had sought or obtained consent for such alteration from the Association after its formation.
Although the plaintiffs have thus established that Inner City violated the by-laws and is liable to them pursuant to General Statutes § 47-278, they have not proven actual damages resulting from this violation, largely because of their own decision to sell their units and move out.
Concluding that they were no longer living in the owner-occupied condominium project they had anticipated when they CT Page 4285 purchased their units, the plaintiffs in December 1992 successfully negotiated with the Connecticut Housing Finance Authority ("CHFA") to surrender the deeds to their units to this purchase money mortgagee in return for a release from further liability on their mortgage loans. In effect, the plaintiffs sold their units to CHFA for the amounts due on their mortgage loans.
Mr. and Mrs. Lenhart, who had borrowed $110,000 from CHFA toward the $120,000 purchase price of their unit when they purchased it in May 1989, were released from that debt upon surrender of their deed to CHFA in December 1992. Since March 1992 they had made no mortgage payments but had escrowed the $1,157. monthly payments. At the conclusion of the CHFA transaction, therefore, they no longer owned the condominium unit at issue, they no longer owed money to CHFA, and they had approximately $10,400. from the escrow of unpaid mortgage payments. They presented no evidence to establish that the fair market value of their condominium unit exceeded the consideration they received on the date they surrendered their deed to CHFA or that its fair market value would have exceeded that amount but for the violations of defendant Inner City.
Mr. and Mrs. Thomas paid $109,400 for their condominium unit in 1988. In December 1992 they surrendered their deed to CHFA in exchange for a release as to the entire balance owed on their $101,200 CHFA mortgage loan. They had made no mortgage payments since November 1991 and, upon the transaction with CHFA in December 1992, they had approximately $12,000 from the escrow account into which they had been paying in lieu of paying CHFA.
Mr. and Mrs. Thomas presented no evidence from which the court could conclude that the fair market value of their condominium unit exceeded the value they received for their unit in December 1992 or that its fair market value would have exceeded that amount but for the violations of defendant Inner City.
Inner City purchased each of its units in the condominium project in March 1991 for either $90,000 or $92,000 as part of a state program to put into use the many unsold condominiums that existed around the state in the late 1980's. This purchase price is evidence that the plaintiff's units were not worth more than the face amount of their first mortgages in 1991 and, indeed, that they had lost considerable value before Inner City's violation of the condominium declaration and by-laws. CT Page 4286
The plaintiffs did not attempt to put their units on the real estate market for sale at any time, so there was no evidence presented as to any offers to purchase the units at a particular price. The plaintiffs did not present the testimony of an appraiser and they did not even testify as to their own estimate of the value of their property at the relevant time. Lovejoy v.Darien, 131 Conn. 533 (1954). In short, the plaintiffs did not present any evidence to attempt to establish the claimed diminution of the value of their units between the time that Inner City altered its units sometime after March of 1991 and the time the plaintiffs relinquished their ownership to CHFA.
A plaintiff who seeks money damages must present evidence which affords the trier a reasonable basis for measuring his or her loss. Expressway Associates III v. Friendly, Ice Cream Corp.,218 Conn. 474, 476 (1991); Gargano v. Heyman, 208 Conn. 616, 620
(1987); Conaway v. Prestia, 191 Conn. 484, 493-94 (1983).
In the absence of evidence of proven actual damages, this court is limited to awarding nominal damages. ExpresswayAssociates III v. Friendly, Ice Cream Corp., 218 Conn. 478;Maganini v. Coleman, 168 Conn. 362 (1975); Grey v. Coastal statesHolding Company, 22 Conn. App. 497, 507.
Judgment shall enter in favor of each of the plaintiffs in the amount of one dollar. The plaintiffs shall recover their statutory court costs.
Beverly J. Hodgson, Judge of the Superior Court