[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
STATEMENT OF THE CASE CT Page 890
The plaintiff is a unit owner in the Savin Rock Condominium, and the defendant is that condominium's association of unit owners. The plaintiff complains that the defendant has illegally permitted unit owner to construct patios in the common areas immediately adjacent to and adjoining their respective units. He also claims that the defendant's efforts to validate existing patio permits and allow additional patios were ineffective for a variety of reasons.
Seeking punitive damages and a mandatory injunction ordering the removal of all such alleged encroachments, the plaintiff states the issues as follows:
I. Whether the actions of the Board of Directors in granting unit owners permission to construct patios, decks and stone walls on the common elements is a taking of Plaintiff's property interest?
II. Whether the August 1990 Amendments were properly adopted?
III. Whether the Association acted improperly in permitting the construction of patios, decks and stone walls which did not comply with the terms of the failed August 1990 Amendment?
IV. And, if the plaintiff is successful as to one or more of the above, what remedy is appropriate to compensate the Plaintiff and compel the Defendant to obey the statutes and the Association's governing documents?
The defendant argues first that equitable relief should be barred to this plaintiff by virtue of his "unclean hands" and aches, that the allowance of patios by the defendant is permissible under the condominium declaration, by-laws and applicable statutes, that the existing patios were validated by the 1990 amendments to the by-laws and declaration, and that the plaintiff's claim that patios were constructed after 1990 in violation of those amendments has no merit.
It should be noted at the outset that the plaintiff in his complaint and in his brief refers to "patios, decks and stone walls" as being permitted by the defendant. The testimony at trial was repeatedly and consistently about "patios" and there was no evidence of "decks and stone walls", though the plaintiff made reference to decks as a more elaborate and permanent addition. There was no evidence as to where "decks and CT Page 891 stonewalls" existed, but the court in proceeding on the assumption that this case pertains to whatever materials have been placed in the common areas adjacent to units as a recreation area to be used by the respective occupants.
 I
The plaintiff's first claim is that the granting of permission by the Board of Directors to construct patios on the common elements is a taking of his property interest. There is no dispute that the patios in question are located on portions of the common element. However, unlike the situation in the case cited by the plaintiff, Grey v. Coastal States Holding Company,22 Conn. App. 497 (1990), these patios are not permanent installations, are not enclosed so as to eliminate access, and do not pass as an appurtenance to the adjoining unit on a sale. There is no suggestion that they interfere with anyone's method of ingress and egress or any other use of the common areas. The court also notes that over 70 units, including the plaintiffs, have patios. The court agrees with the defendant that the allowance of such patio is a common area use regulation, permitted under the condominium declaration, by-laws, and statutes.
Permitting patios is allowed under § 47-80 (b) which addresses what condominium by-laws may provide. Specifically, subsection 10 states:
 "(10) such restrictions on and requirements respecting the use and maintenance of the units and the use of the common areas and facilities, not set forth in the declaration, as are designed to prevent unreasonable interference with the use of their respective units and of the common areas and facilities by the several unit owners. . . . "
Further, the plaintiff's testimony in this case lacked any mention of a lost or deprived property right or any loss he sustained as these patios increased in number. In fact, the plaintiff signed patio approvals between 1982 and 1987 in his capacity as board member, thinking they were legal. His stated complaint to the court was that the defendant wasn't enforcing the rules strictly enough. CT Page 892
The court finds applicable the defendant's analogy in comparing these patio areas to the front stoops of the units. The stoops are in the common areas, but it logically follows that they would be used by the respective unit owners and invitees. The patios serve a similar function, though the use is more recreational than necessary passage.
 II.
The by-laws amendments of August 28, 1990 authorize patio construction with board approval. They also validate existing patios. The plaintiff argues that these amendments are invalid for several reasons.
 A.
In view of the court's determination that the placement of patios is actually a regulation of the use and maintenance of the common areas, it may be properly addressed and governed by the by laws. A by-law amendment at the time of the 1990 enactment required 51% of the unit owners to vote in its favor. The declaration change requirement was 66-2/3%. Actually 68 favored the declaration change and 64 the by-law change. Thus, the by-law amendment was legally enacted. (Ex. J. Minutes of August 28, 1990).
The plaintiff also argues that § 47-74 (b)(2) requires that 75 of the unit owners must vote in favor of any change in "the percentage of the undivided interest of each unit owner in the common areas. . . ." However, this section discusses the unit owner's interest as being based on the fair value of the unit as compared to the fair value of all of the units. No evidence was presented to the court to enable the computation required by this section to be made, even if this section were shown to be applicable.
 B.
The plaintiff also alleges that the 1990 amendments were not enacted properly because both the condominium by-laws and declaration require the approval of any amendments by any mortgagee holding more than 35 first mortgages on units in the condominium and no notices of proposed amendments were sent to mortgagees until 1994. CT Page 893
The plaintiff bears the burden on this claim to show that there were mortgagees entitled to such notice. No evidence was introduced on this issue and the court has no basis upon which to conclude that the defendant's procedures were flawed in this respect.
 C.
The plaintiff further argues that the defendant was required to obtain the unanimous consent of all unit owners in order to authorize the placement of patios, which he asserts constitute unlawful takings. This claim is based on § 47-75, entitled "Obligations of unit owners and reads as follows:
 (a) Each unit owner shall comply strictly with the bylaws and with the administrative rules and regulations adopted pursuant thereto, and with the covenants, conditions and restrictions set forth in the declaration or in the deed to his unit. Failure to so comply shall be ground for an action to recover damages or for injunctive relief, or both, maintainable by the manager or board of directors on behalf of the association of unit owners or, in a proper case, by an aggrieved unit owner. (b) No unit owner shall do any work which may jeopardize the soundness or thereof or impair any easement right, appurtenance or other hereditament constituting a common area and facility without the unanimous consent of all the other unit owners." Emphasis added.
Interpreted as the plaintiff suggests, this section would be in direct conflict with § 47-74, discussed above. However, this statute is directed at unit owners, not associations of owners. And, a court should attempt to interpret apparently conflicting statutes in such a way that they can each be administered logically and reasonably.
Thus, § 47-75 must be construed as directed at unit owners to regulate their actions and subsection (b) must be construed not to encompass in "any easement, right, appurtenance or other hereditament constituting a common area" those areas delineated in the declaration and by-laws and as regulated, CT Page 894 modified, restricted or otherwise addressed by the association of unit owners. It necessarily follows that the patios in question having been permitted under § 47-74 cannot be attacked under § 47-75.
It should also be noted that the plaintiff's remedy if he has one under this statute would be against individual unit owners. The plaintiff opposed the defendant's efforts to cite in the unit owners as necessary parties and none of them are parties at this time. Therefore, the court has no jurisdiction over any unit owner who violates § 47-75.
 III
The plaintiff's third claim is that the defendant acted improperly in permitting the construction of patios, decks and stone walls which did not comply with the terms of the "failed" 1990 Amendment.
By its characterization of 1990 amendment as "failed", the court assumes the thrust of this claim is that the amendment was invalid and therefore all approvals and ratifications issued pursuant to it are invalid. This is not the case, since the court has found the enactment to be valid.
There are also several counts of the plaintiff's complaint, viz. 4-9, which allege that certain patios are illegal for a variety of reasons. However, no evidence was presented to support the allegations. Thus, no evidence was presented to show what patios were placed without the owner's application for board approval. Nor was there evidence offered to show which patios were in violation of the approval received and what the violations were. Specifications violations were alleged as to certain patios, but no proof was offered to support the allegation. There were counts directed at a failure to "stake" the patios and inspect them. Again, in the absence of evidence to support the allegations, these counts must fail.
 IV
The defendant has asserted "unclean hands" and laches as equitable defenses. In connection with the former, the defendant cites the plaintiff's involvement in board approvals of patios, his attendance at meetings addressing the issue of their existence, and the fact that he applied for and received approval CT Page 895 of a patio which he constructed at his unit.
The plaintiff explained his actions and much of his behavior he attributed to a belief that the patios were legal. This belief persisted for many years. The court will give him the benefit of the doubt and deny the defense of "unclean hands".
The question of whether the plaintiff is guilty of laches is another matter. This action was brought in 1994. The plaintiff had extensive dealings with the defendant board and its past and present members over the years, serving as a member from 1982 to 1987 and again in 1992. He was a member of the association's maintenance committee for five years and was board president for at least a year. In the court's view of the patio situation, the patio issue was known to the plaintiff since at least 1983. Taking him at his word, he had concerns in 1987. In 1992, he spoke to an attorney and his concerns intensified.
The delay in taking action on his concerns until 1994 was not explained and the court concludes it was inexcusable and finds the plaintiff guilty of laches.
CONCLUSION
 A.
At the conclusion of the plaintiff's evidence, the defendant moved for judgment dismissing the case. The court reserved decision. That motion is denied, the court concluding that the matter should be addressed on the merits as above.
 B.
The motion to strike filed before trial is denied.
 C.
Judgment may enter for the defendant on all counts. As noted above, a decision on the merits was appropriate, despite the court's finding of laches, particularly in the event of an appeal.
Anthony V. DeMayo Judge Trial Referee CT Page 896