## STANLEY RAFALOWSKI ET AL. *v.* OLD COUNTY ROAD, INC.*

Superior Court          Judicial District of          File No. CV950555432S
Hartford-New Britain at Hartford

Memorandum filed March 26, 1997

*Edward M. Rosenthal*, for the plaintiffs.

*Wall, McCormack & Robinson*, for the defendant.

## I

## INTRODUCTION

LAVINE, J. The plaintiffs, condominium unit owners at 1000 Old County Circle, Windsor Locks, have brought suit against the defendant, Old County Road, Inc., the developer of the subject property and the declarant of a common interest community known as Old County Circle Industrial Park Lot No. 5-6

* Affirmed. *Rafalowski* v. *Old County Road, Inc.*, 245 Conn. 504, 714 A.2d 675 (1998).

(association). In their eighteen count complaint, the plaintiffs allege that the association consists of one building subdivided into sixteen units. The plaintiffs allege further that the defendant owns various units, several of which are leased and that at all material times, the defendant and its officers, owners, or employees have been the sole officers of the association and, until March, 1995, have been the sole executive board members of the association.

Generally speaking, the complaint sets out three basic categories of allegations relating to assessments and fees, management and maintaining common elements.

In count one of the complaint, it is alleged that pursuant to executive board resolution, an assessment for common expenses of the association was levied upon all units at the rate of $1.01 per square foot at the time of the inception of the association. It is also alleged that the defendant has only paid fifty cents per square foot at the time of the assessment for common expenses on units it owns that are not leased to third parties. Count one further alleges that, despite demand, the defendant has failed and refused to pay the full assessment of the units.

In subsequent counts, a wide variety of allegations are made relating to alleged mismanagement by the defendant including, in count eighteen, a claimed violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The plaintiffs seek monetary damages and various orders as relief, as well as attorney's fees and punitive damages.

Trial was held on November 19, 20, 21 and 26. Witnesses included the plaintiffs and Gary Pierce, who is owner of 50 percent of the defendant. Briefs and

responsive briefs have been filed. Oral argument was held on March 24, 1997.

Having considered the full record and all of the arguments set forth, the court concludes that judgment should enter for the defendant on all counts except counts two and eighteen; judgment on those two counts should enter for the plaintiffs.[1]

## II

## DISCUSSION

Preliminarily, it should be noted that the plaintiffs bear the burden of proof as to both liability and damages by a preponderance of the evidence.

Even if the plaintiffs prove an allegation, they are not entitled to relief unless damages can be proven. Damages must be established with reasonable certainty, and not be based on speculation or surmise. *Johnson* v. *Flammia*, 169 Conn. 491, 500, 363 A.2d 1048 (1975). A plaintiff must prove damages with as much certainty as is possible. *Southern New England Contracting Co.* v. *State*, 165 Conn. 644, 661, 345 A.2d 550 (1974). While mathematical exactitude is often impossible, the party claiming damages must nonetheless make a fair and sufficient estimate. *Falco* v. *James Peter Associates, Inc.*, 165 Conn. 442, 445, 334 A.2d 475 (1973). It has been held that condominium unit owners could recover

---

[1] In counts eight, nine, ten, eleven, twelve, fourteen, fifteen and sixteen the plaintiffs allege that the defendant has violated various provisions of the Common Interest Ownership Act, General Statutes § 47-200 et seq. (act). Notwithstanding the defendant's failure to move to strike these counts, or to seek summary judgment as to them, the plaintiffs retain the burden of proving the applicability of the act. See General Statutes § 47-215. Section 9.1 (e) of the condominium declaration states that "[t]his is a non-residential condominium." The plaintiffs' testimony confirmed that. The act is not applicable. See *Robert S. Weiss & Associates, Inc.* v. *Wiederlight*, 208 Conn. 525, 535 n.5, 546 A.2d 216 (1988), cited by the defendant. Judgment on these counts may enter for the defendant given the nonapplicability of the act.

only nominal damages for another owners' breach of a condominium declaration absent evidence of decline in value of their units. *Grey* v. *Coastal States Holding Co.*, 22 Conn. App. 497, 507, 578 A.2d 1080, cert. denied, 216 Conn. 817, 580 A.2d 57 (1990). At trial, the plaintiffs offered neither expert testimony nor other persuasive evidence indicating that there had been a decline in the value of their units as a consequence of the defendant's alleged actions.

## A

### Count One

Count one alleges: "(1) On June 22, 1989, Robert Lemanski, co-plaintiff, purchased a condominium unit at 1000 Old County Circle, units 110 and 111, Windsor Locks, Connecticut. (2) On July 18, 1989, Stanley Rafalowski, co-plaintiff, purchased a condominium unit at 1000 Old County Circle, units 105 and 106, Windsor Locks, Connecticut. (3) Steven Tripp, co-plaintiff, purchased a condominium unit at 1000 Old County Circle, unit 115, Windsor Locks, Connecticut. (4) Said condominium units were part of a common interest community known as Old County Circle Industrial Park Lot No. 5-6 (hereinafter 'Association'). A declaration of condominium [(declaration)] was recorded on June 14, 1989 in the Windsor Locks land Records in Volume 188 at Page 71. (5) Said Association consists of one building subdivided into sixteen units. (6) At all times material hereto, the Defendant, Old County Road, Inc., was the developer of the property, and the declarant of the Association. (7) At all times material hereto, the Defendant, or officers or employees of the Defendant, have been the sole officers of the Association, and until March, 1995, have been the sole Executive Board members of the Association. (8) Pursuant to Executive Board action, an assessment for common expenses of the association was levied upon all units at the rate of

$1.01 per square foot at the time of the inception of the Association. (9) The Defendant is the owner of units 98, 102, 103, 107, 108, 109, 112, 114, and, 116 several of which are leased. The total area of these units is 31,546 square feet. (10) Since the inception of the Association, the Defendant has only been paying $.50 per square foot of the assessment for common expenses of the Association on units it owns that are not leased to third parties. (11) Upon information and belief, the Defendant, as part of its lease agreements with third parties who are leasing units in the Association, has been collecting the assessment for common expenses from its lessees but not retaining it for the Association in full. (12) Despite demand, the Defendant has failed, refused, or neglected to pay the full assessment to the Association on units it owns or has owned."

Count one, in its essence, alleges that the defendant has been paying only fifty cents per square foot of the assessment for common expenses, not the rate—initially $1.01, but subsequently lowered—that other unit owners are charged. Conceding that there are no Connecticut cases on point, the plaintiffs cite numerous out-of-state cases which, they contend, stand for the proposition that the defendant lacked the right to charge itself a lesser charge for common expenses. See, e.g., *Aluminium Industries Corp.* v. *Camelot Trails Condominium Corp.*, 194 Wis. 2d 575, 535 N.W.2d 74 (App. 1995); *Mountain View Condominium Assn.* v. *Scott,* 180 Ariz. 216, 883 P.2d 453 (App. 1994); and other out-of-state cases cited by the plaintiffs, all of which have been reviewed. The plaintiffs assert that the evidence showed that Pierce testified that the defendant was paying only 50 percent of the assessment on units 98, 102 and 116, and that the defendant should have paid $153,591 more than it has paid from the period of July, 1989, to July, 1996.

The defendant makes a number of arguments. Preliminarily, the defendant asserts that since from at least 1994, the plaintiffs knew that the common expenses rate for some units was different than for others. The defendant argues that the lesser assessment charged on some of the units was justified because the units were "unfinished"—having no ceilings, no interior walls, no finished plumbing or electricity and part concrete and part sand floors. As a consequence of their unfinished states, the defendant argues, the unfinished units are less expensive to insure, less expensive to maintain, create no trash that must be hauled away, use no water or electricity billed to the association and their exterior rear areas do not require snow removal with its attendant costs. Based on these factors, the defendant contends that the executive board felt justified in reducing the rate for unfinished units.

Having considered the full record, the court concludes that the defendant has the better argument and should prevail on count one for the following reasons.

First, as the parties agree, there is nothing in the declaration or in the bylaws which either expressly permits, or expressly prohibits, the defendant from charging itself a lesser rate for unfinished units.[2] Neither is there any controlling Connecticut authority which prohibits it nor is the practice prohibited by any statute brought to the court's attention. The out-of-state cases relied upon, while relevant to the analysis, are not controlling and are, in varying degrees, distinguishable

---

[2] But see § 18.2 of the declaration, which provides: "Any Common Expense for services provided by the Association to an individual Unit at the request of the Unit Owner shall be assessed against the Unit which benefits from such service."

The defendant argues that this section provides a "reasonable context" for the charging of different rates, while acknowledging that it fails to authorize explicitly the charging of different rates.

either on their facts (for example, *Aluminum Industries Corp.* concerns assessments on units not yet constructed) or because they relate to a specific statutory scheme in another state. The court agrees that an association in the nature of a fiduciary relationship existed between the defendant and the plaintiffs. See, e.g., *Governors Grove Condominium Assn., Inc.* v. *Hill Development Corp.*, 36 Conn. Sup. 144, 154–55, 414 A.2d 1177 (1980); *Thanasoulis* v. *Winston Towers 200 Assn., Inc.*, 110 N.J. 650, 542 A.2d 900 (1988). A residential condominium owner who is dealing with a significantly more sophisticated condominium owner, however, is not at issue in the present case. No claim of unconscionability has been made here. The relationship between the plaintiffs and the defendant existed within the framework of an arm's-length commercial transaction between reasonably sophisticated parties. The legal contours of the relationship were defined by the declaration and by the bylaws, which the plaintiffs, businessmen, had in their possession before they closed. The plaintiffs must be presumed to have understood that, pursuant to those documents, the defendant, who has at all times had a controlling interest, could choose to assert its control over the budgetary process. This is what the defendant did. Fraud has not been alleged, and there is no evidence in the record that the defendant affirmatively acted to deceive or to mislead the plaintiffs on this issue. Compare, e.g., *Governors Grove Condominium Assn., Inc.* v. *Hill Development Corp.*, supra, 151–54. Moreover, the defendant had a fundamentally reasonable basis to assess the unfinished units at a lesser rate than other units. The record does not support the conclusion that the decision to charge a lesser rate for unfinished units was either pretextual or fundamentally unreasonable. In the final analysis, the defendant was exercising the prerogatives which its controlling interest permitted

under the declaration and bylaws, implicitly, if not explicitly.[3]

In summary, the court concludes that, in the absence of any statutory or case law authority prohibiting what the defendant did, in the absence of anything in the bylaws or a declaration preventing it, in light of the arm's-length commercial nature of the transaction between the parties, in the absence of any evidence of deceit, and in light of the fundamentally reasonable basis for the defendant to assess unfinished units at a lesser rate, the defendant must prevail on count one. Consequently, judgment may enter for the defendant on count one.[4]

## B

## Count Two

Count two alleges that the defendant, at all relevant times the sole member of the executive board and the sole officer of the association, breached its fiduciary duty to the plaintiffs in five specific ways. Specifically, the plaintiffs allege in count two that the defendant breached that fiduciary duty "(a) in failing to hold any Executive Board meeting from the date of the inception of the Association until March of 1995 in violation of Section 2.8 of the Association's Bylaws. (b) in failing to hold any annual meetings of the unit owners from the date of the inception of the Association until November 1994 in violation of Section 3.1 of the Association's Bylaws. (c) in failing to hold any annual meetings to

---

[3] See, e.g., § 2.2 of the bylaws entitled: "Powers and Duties." Subsection (b) of that section gives the executive board—which the defendant controlled—the power to adopt and to amend budgets. See also § 18.4 of the declaration.

[4] It must be conceded that the potential for abuse exists in situations similar to that presented here. Presumably, the parties to such arrangements can remedy this by including appropriate language in the declaration and bylaws. Or, if the legislature perceives a significant problem, it could address this issue.

consider the adoption and ratification of the [Association's] budget from the date of the inception of the Association to the date of this complaint in violation of Section 18.4 of the Declaration. (d) in failing to provide a summary of the budget to all unit owners since the date of the inception of the Association to the date of this complaint in violation of Section 18.4 of the Declaration. (e) in failing to give notice of any meetings of the unit owners or of any meetings to consider the Association's budget or of any meetings to elect Executive Board members since the inception of the Association to the date of this complaint in violation of Section 3.5 of the Bylaws." The plaintiffs' allegations were proven, in whole or in part.

With respect to allegation (a), the evidence indicated that executive board meetings were not, in fact, held until March, 1995. The evidence also indicated that the business of the association was conducted informally; required formalities were clearly not observed.

With respect to allegation (b), the evidence supports the plaintiffs' claims that annual unit owners meetings were not held until 1994, as the defendant concedes.

Turning to allegation (c), the evidence indicates that formal budget meetings were not held. As the defendant notes, however, the defendant corporation has never held less than 50 percent of the votes of the association, and, therefore, no budget endorsed by the defendant could have been rejected.

With respect to allegation (d), the evidence indicated that the plaintiffs did not request budget information from the defendant, and indicated further that, when requested, the defendant offered to open the financial records to audit or investigation.

As to allegation (e), the evidence supports the plaintiffs' claims.

Consequently, the plaintiffs have prevailed on count two.

There is no evidence in the record, however, that these breaches harmed or financially damaged the defendant in any discernable way, other than by violating the cited provisions of the declaration and bylaws and thereby depriving them of information and input to which they were entitled. The plaintiffs offered no evidence upon which the court could base an award of more than nominal damages. See *Grey* v. *Coastal States Holding Co.*, supra, 22 Conn. App. 507. Consequently, nominal damages of $1 are awarded to each plaintiff on this count. Judgment shall enter for the plaintiffs on this count.

### C

### Count Three

In count three, the plaintiffs allege that the defendant breached its fiduciary duty to them by paying Pierce $362.50 per month pursuant to an interim management contract, when the contract only called for $308.33 to be paid.

The evidence on this point is somewhat ambiguous. The defendant argues that Pierce testified that some initial documents mistakenly indicated a higher management fee than what was agreed to, but that this error was corrected. The defendant asserts that Pierce testified that, in fact, no increase in the agreed upon management fee was obtained, and that his testimony on this point is uncontroverted.

The court agrees with the defendant's argument that, notwithstanding the apparent confusion, Pierce's testimony that no increase was, in fact, received stands uncontroverted.

Consequently, judgment may enter for the defendant on this count.

## D

## Count Four

Count four alleges, in substance, that the defendant breached its fiduciary duty to the plaintiffs by entering into the interim management contract with itself and by failing to provide reasonable and fair terms in the contract "specifically, not having a termination date in the contract."

The plaintiff has failed to provide these allegations.

Moreover, paragraph five of the interim management contract provides that "[t]his contract may be terminated by either party on sixty (60) days written notice to the other party."

Judgment on count four may enter for the defendant.

## E

## Count Five

Count five alleges, in substance, that rain has been permitted to enter the building through a defective roof, causing damage, and that the defendant has failed to remedy the defects.

The evidence showed that there had been some problems with leaky roofs. There was no evidence, however, that annoying as this was, it has interfered in any significant way with the plaintiffs' ability to go about their business activities, as alleged. Moreover, the evidence showed that Pierce and Gene Simmons have taken reasonable, if not fully successful, efforts to remedy whatever problems existed.

Consequently, judgment on this count shall enter for the defendant.

F

## Count Six

Count six alleges that the defendant breached its fiduciary duty by self-dealing, relative to various activities, including, but not limited to, the providing of snowplowing and lawn mowing services.

The plaintiffs' evidence that a company in which Simmons is involved handled the snowplowing is insufficient to carry its burden of proof. So was the other evidence produced by the plaintiffs.

Judgment shall enter for the defendant on count six.

G

## Count Seven

Count seven alleges, in substance, that a portion of the building's rear concourse remains unpaved despite the defendant having promised that it would be paved within a "reasonable" time of the plaintiffs' purchases.

The evidence indicated that the plaintiffs knew that this area was only partially paved when they purchased their units; that the final layer of paving had not been applied because a unit's rear entrance could be finished either as a drive-in or a loading dock; and that, because the units were not sold, the proper alternative could not be agreed upon. The evidence also indicated that, appearances aside, the area is useable.

While the plaintiffs' displeasure is understandable, under the circumstances, the court concludes that the defendant's stated desire to complete the paving within a "reasonable" time was too vague, and subject to too many contingencies, to support the plaintiffs' claims in count seven.

## H

## Count Thirteen

In count thirteen, the plaintiffs allege in substance that the defendant breached its fiduciary duty by failing to turn control of Old County Circle, a private road, over to the town, thereby obviating a need to expend association funds on the road's maintenance, and by paying itself a "road fee" from association funds.

The court concurs with the arguments made by the defendant as to this count.

Preliminarily, it should be noted that the declaration, which the plaintiffs submitted as one of their exhibits, states in § 18.1 (e) that expenses are defined to include "[e]xpenses for Old County Circle, a private road. . . ." As the defendant notes, schedule A-5 of this same exhibit estimates that the association's share of the annual operating expenses of Old County Circle would be $5715. The evidence indicated that the amount actually charged was $4100. As the defendant also notes, each of the plaintiffs testified that they had received a copy of the declaration in advance of their closings. The plaintiffs, therefore, were on notice that Old County Circle was a private way and that they would share a portion of its maintenance costs as a common expense.

The evidence also showed that in 1996, a purchase of adjacent land owned by the defendant occurred, and that the town accepted the road.

In light of the above, judgment shall enter for the defendant on count thirteen.

## I

## Count Seventeen

In count seventeen, the named plaintiff and plaintiff Robert Lemanski allege that the defendant violated its

fiduciary duty to them by collecting moneys as initial fees and common expenses reserves and by then failing to establish a reserve account. The evidence supported the allegations of these plaintiffs as to the reserve accounts. Defendant's counsel, however, has represented that the sums collected for the reserve account have been repaid.

Judgment on this count shall enter for the aforementioned plaintiffs. The defendant is ordered to pay them $1 each in nominal damages, and also to pay interest from the date the moneys were collected, said amount to be agreed upon by counsel.

## J

### Count Eighteen

Count eighteen, as mentioned previously, alleges a violation of CUTPA in connection with numerous alleged instances of mismanagement. These alleged activities, however, are not a "trade" or "practice" and, therefore, do not come within the purview of CUTPA. See *Sargis* v. *Seventy Grove Hill Condominium Assn., Inc.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV880430590S (July 19, 1990) (2 Conn. L. Rptr. 152, 154) (*Aronson, J.*); *New Section Glen Oaks Condominium, Inc.* v. *Glen Oaks Associates, Inc.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 349747 (March 17, 1989) (4 C.S.C.R. 378) (*Thompson, J.*) (neither claims of mismanagement of unit owner's association, nor claims of corporate mismanagement, come within CUTPA); *Hunter* v. *Turner*, Superior Court, judicial district of New London, Docket No. 521151 (October 22, 1993) (10 Conn. L. Rptr. 273) (*Austin, J.*) ("[t]he management of a condominium association does not constitute 'trade or commerce' "). See also the discussion of this issue in *West Farms Condominium Assn. No. 1, Inc.* v. *Satell*, Superior Court, judicial district of

Hartford-New Britain at Hartford, Docket No. CV930523203 (May 10, 1995) (14 Conn. L. Rptr. 214, 214–15) (*Berger, J.*).

The court is in agreement with these decisions. Moreover, the plaintiffs have failed to prove an ascertainable loss of money or property, as required by General Statutes § 42-110g. See *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 684–85, 657 A.2d 1087 (1995). Consequently, judgment may enter for the defendant on count eighteen.

### III

### CONCLUSION

For the aforestated reasons, judgment shall enter for the defendant on all counts of the complaint other than on counts two and seventeen. On counts two and seventeen, judgment shall enter for the plaintiffs as indicated.