EXCEL COMPANY, INC. *v.* FREEMAN, ET AL.

[No. 45, September Term, 1968.]

*Decided February 4, 1969.*

The cause was submitted on brief to HAMMOND, C. J., and MARBURY, BARNES, SINGLEY and SMITH, JJ.

Submitted by *George A. Wilkinson, Jr.* for appellant.

Submitted by *Marion E. West* for appellees.

MARBURY, J., delivered the opinion of the Court.

In January 1965, the appellees, Leona H. Gibbons Freeman, and eight other owners, listed with Smith-Brooke Realty Inc. the unimproved property under consideration at 80 cents per square foot for the entire tract which consisted of approximately 12.02 acres. Around March of 1965 the appellant, Excel Company, Inc. (Excel), made an offer to buy the property, and after negotiations, the parties finally signed a contract in July 1965. As a condition precedent to the transfer of the property, Excel was to apply for two zoning changes at its own expense. The contract price was set at the rate of "70 cents per square foot of portion zoned." The front portion of the property (approximately 1.32 acres) was to be rezoned C-2 and the rear portion (approximately 10.70 acres) was to be rezoned R-10.

Before the contract was signed, counsel for the appellees submitted to the appellant a series of five questions related to the interpretation that appellant gave to certain of the contract provisions. One question read: "Is .70¢ per square foot a combination price for the total acreage, that which is zoned C-2 and R-10? What about the portion that receives neither of these classifications?" Appellant's answer was "Yes" to the first of these interrogatories. Its answer to the second was, "Any portion designated as road dedication—and thus eliminated and/or not zoned, to be eliminated from sales price. Any other part of the property not zoned and not useable to be eliminated and/or kept by seller." The original contract offer was then retyped and modified by appellees' counsel, who added a new sheet to the reverse side of the contract incorporating the questions and

answers. Paragraph 1 of this new sheet stated: "The combination price for the total Zoned acreage shall be $.70 per sq. ft."

Unknown to either the appellant or the appellees, the Park and Planning Commission had released, under date of July 1, 1965, a "Land Use Map" which indicated that the rear part of the subject parcel had been selected by the Prince George's County Board of Education as a proposed elementary school site. A few days after the contract was signed the appellant instituted the necessary proceedings to obtain the contemplated rezonings. On November 2, 1966, the County Commissioners of Prince George's County, sitting as the District Council for that portion of the Maryland-Washington Regional District lying within Prince George's County, granted the zoning petition for C-2 for 1.22 acres (rather than the 1.32 acres applied for). The zoning petition for R-10 was continued until January 4, 1967, when it was denied "inasmuch as the Board of Education is planning to take the entire property." By December 16, 1966, the Board of Education had filed against the appellees a suit for condemnation of the rear portion of the subject property. As a result of that suit the appellees received a jury award of approximately $197,000 for the 10.7 acres of unrezoned property.

On March 9, 1967, the appellant filed a bill of complaint for specific performance and other relief, seeking to obtain the 1.22 acres that had been zoned C-2 for the contract price of 70 cents per square foot. After a full hearing, on February 12, 1968, the chancellor filed a memorandum and order of court denying specific performance, with costs to be paid by the appellant.

On appeal the appellant raises five questions.

(1) What was the intention of the parties under the language of the contract concerning any land not rezoned?

(2) Against which party's interest should any ambiguity in language be construed?

(3) Considered in the light of the answers to questions 1 and 2, was performance under the contract rendered impossible by virtue of the School Board taking?

(4) Was the contract between appellant and appellees sufficiently definite to allow specific performance as to that portion of the property that was commercially rezoned?

(5) Did the chancellor err in considering facts not properly before it, to wit: the low award given by the jury in the School Board condemnation?

Where doubt arises from the language of a contract as to general intention of the parties extrinsic evidence is admissible to enable the court to make a proper determination. *Schuman v. Gordon Investment Corp.*, 247 Md. 265, 232 A. 2d 256; *Sommers v. Dukes*, 208 Md. 386, 118 A. 2d 660. On the question of intention, the lower court stated:

"It is clear to the Court, from hearing testimony in open court and the reading of the contract, as well as plaintiff's exhibit ♯ 1 [the five questions and answers], that the parties did not contemplate that nearly 90 % of the total property involved in the transaction would be taken by the Board of Education as a site for an elementary school. Neither party had knowledge nor any reason to believe that there would be such a taking. It is just as clear, and is reflected in the terms of the contract, that the parties did contemplate that there might be some portion of the total not rezoned as a result of dedication for the widening of existing roadways, or the possible creation of new streets; this being the case, that portion so excluded from rezoning was not to be considered as a part of the total in computing the selling price."

The appellant urges this Court to accept "without reservation" the five questions and answers which were incorporated into the contract in deciding the intent of the parties concerning land not rezoned. Standing alone, these questions and answers are insufficient to indicate such intent, and we accept the lower court's findings.

Secondly, appellant argues that since the contract as originally submitted was retyped and a separate page of terms was

added by counsel for the appellees, the contract should be construed most strongly against the appellees as the parties preparing the agreement. Under the view this Court takes of this case, even if we construe the contract against the appellees, the lower court still properly denied specific performance.

Turning to appellant's third and fourth questions, the lower court found that the condemnation proceedings rendered the performance of the contract impossible since almost 90 % of the total land described in the agreement between the parties was subsequently acquired by the Board of Education as a proposed school site. Excel correctly cites *Westpark, Inc. v. Seaton Land Co.,* 225 Md. 433, 455, 171 A. 2d 736, 746, for the proposition that "When a vendor is unable to transfer title to all of the land that he contracted to transfer, the vendee, if he so desires, may seek specific performance with respect to the balance."

As a general rule, the granting of specific performance is within the sound discretion of the equity court. *Horst v. Kraft,* 247 Md. 455, 231 A. 2d 674; *Md. City Realty v. Vogts,* 238 Md. 290, 208 A. 2d 701; *The Glendale Corp. v. Crawford,* 207 Md. 148, 114 A. 2d 33. However, that discretion is not arbitrary and "where the contract is fair, reasonable and certain, it is as much a matter of course for a court of equity to decree specific performance as it is for a court of law to award damages for its breach. . . ." *Pollin v. Perkins,* 223 Md. 532, 544, 165 A. 2d 908, 913; *Lissau v. Smith,* 215 Md. 538, 138 A. 2d 381; *Chapman v. Thomas,* 211 Md. 102, 126 A. 2d 579.

In the instant case, it would be physically possible for the appellees to convey title to the C-2 parcel of the property under discussion to Excel. However, it would be impossible to determine the price which the appellees should receive in return. As the lower court stated: "There is no doubt in the Court's mind that the price of seventy cents per square foot, set forth as the selling price, was based upon the selling of the whole or substantially the whole amount under consideration at the time of the signing and not just a small choice fraction thereof." The evidence abundantly supports this conclusion. The last page of the contract, paragraph 1 provided: "The *combination price* for the total Zoned acreage shall be $.70 per

sq. ft." (Emphasis supplied.) Paragraph 4 b of that page provided that "Acreage to be released for all annual payments at the same rate of $30,492. per acre for R-10 and at the rate of $100,000. per acre for commercially zoned property." As pointed out by the appellees, both parties acknowledged by this clause that commercially zoned property was worth in excess of three times that of R-10 zoned property.

Appellant argues that the contract is a severable one rather than an entire contract since the appellees' total land was to be considered as two parcels for rezoning purposes. Since the contract specified that 70 cents was to be a combination price, we agree with the lower court that this contention has no merit.

To be specifically enforced, a contract for the sale of real property must be definite and certain in its terms. *Silverman v. Kogok, Adm'r,* 239 Md. 71, 210 A. 2d 375; *Grooms v. Williams,* 227 Md. 165, 175 A. 2d 575; *Globe Home Impvt. Co. v. Brothers,* 204 Md. 73, 102 A. 2d 748. The price to be paid for solely commercial land is not set out in the contract. Certainly the parties valued it higher than the R-10 portion. Since the price to be paid for the C-2 portion was uncertain, we cannot say that the lower court erred in denying specific performance.

Finally, the appellant urges that the lower court erred in considering the low award given by the jury in the School Board condemnation case in denying specific performance. We need not consider this point since we have already decided that specific performance of the contract as sought by the appellant could not be granted because of an indefinite and uncertain price term.

For the reasons stated above the order must be affirmed.

> *Order affirmed. Costs to be paid by appellant.*