824 A.2d 1031

**KOBRINE, L.L.C. et al.**

v.

**Bruce METZGER et al.**

**No. 1487, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

May 30, 2003.

262

Scott S. Morrison (Nicole Lynn Kobrine, Katten, Muchin, Zavis Rosenmann, on brief), Washington, DC, for appellants.

John L. Erly (Laurence W. B. Cumberland, Nancy J. Gordillo, Cumberland & Erly, L.L.C., on brief), Prince Frederick, for appellees.

Argued before HOLLANDER, EYLER, JAMES R. and ADKINS, JJ.

EYLER, JAMES R., J.

This case involves a dispute over title to and the use of a parcel of property (hereinafter referred to as the "parcel in question") located on the Patuxent River in a subdivision known as Harbor Light Beach ("HLB"). The parties are a homeowner's association and owners or former owners of lots and other parcels of land located in the subdivision. The parcel in question had been used by the lot owners in HLB for recreational purposes. The circuit court held that the lot owners enjoyed an easement in the parcel in question and certain lot owners held title to the parcel in question. We shall affirm the judgment of the circuit court with one exception; we shall vacate the order with respect to Dr. Arthur Kobrine, a non-party.

## Factual Background

This litigation began in 1999 when several of the lot owners in HLB filed a complaint in the Circuit Court for Calvert County, seeking a declaratory judgment and other relief against Kobrine, L.L.C., one of the appellants herein, challenging the company's asserted ownership of the parcel in question. The operative complaint is the second amended complaint filed on July 21, 2000. As of that time, the plaintiffs were Bruce R. Metzger, the owner of a lot in section 2 of HLB subdivision, and HLB Home Owners Association, Inc., appellees herein, and the defendants were Kobrine, L.L.C. and various individuals who owned lots and other parcels in HLB, some of whom had originally been named as plaintiffs, as well

as Joseph B. Waters, III, Richard C. Alexander, Janet Owens and Jennifer Owens as personal representatives of the estate of Dorothy Owens, who granted the parcel in question to Kobrine, L.L.C., and who are the remaining appellants.

The original property, developed as HLB, was owned by J. Earl and Ruth C. Brown at the time of its subdivision in 1956. At that time, the plats depicting section 1 and section 2 were recorded in the plat records of Calvert County. The parcel in question is depicted on the plat of section 2 and is described as "Area Reserved for the Use of Lot Owners." After the plats were recorded, the Browns conveyed some of the lots to individuals who were predecessors in title to some of the defendants and, except for certain conveyances not here relevant, conveyed the rest of the HLB property to Beltway Industries, Inc. (Beltway). The conveyance to Beltway was by deed dated September 13, 1960, which was recorded in the land records of Calvert County.

In 1972, Beltway executed a Declaration of Covenants, Restrictions and Conditions ("the Declaration"), also recorded in the land records of Calvert County. Beltway conveyed some of the lots in the subdivision to individuals who are predecessors in title to some of the defendants and conveyed the remainder of the HLB property to Joseph B. Waters, III, Dorothy S. Owens,[1] and Richard C. Alexander (Waters *et al.*). The conveyance to Waters *et al.* was by deed dated June 30, 1976, which was recorded in the land records of Calvert County.

Bruce Metzger acquired title to his lot from the prior lot owner, by deed dated April 24, 1998, which was recorded in the land records of Calvert County.

In 1991, Dr. Arthur Kobrine and his wife purchased a lot in section 2 of HLB, which was adjacent to the parcel in question. In 1999, Dr. Kobrine and his wife formed Kobrine, L.L.C. to acquire title to the parcel in question. Waters et al.

---

1. Dorothy S. Owens died, and Janet Owens and Jennifer Owens were appointed personal representatives of her estate.

conveyed the parcel in question to Kobrine, L.L.C. by deed dated September 28, 1999, which was recorded in the land records of Calvert County.

Appellees, in their second amended complaint, alleged that they and their predecessors in title openly used the parcel in question for recreational purposes for over 20 years. Appellees sought a declaration that they and other lot owners in .HLB have an easement in the parcel in question for recreational purposes, based on the Declaration and the plat depicting section 2 of the HLB subdivision or, in the alternative, by prescription. Appellees also sought a declaration that Kobrine, L.L.C. held title to the parcel in question in constructive trust for HLB lot owners and that Kobrine, L.L.C. be required to convey title to the lot owners. Finally, appellees asked that Kobrine, L.L.C. be enjoined from interfering with the lot owners' use of the parcel in question.

The case was tried on May 2, 2002, and the court issued a memorandum and order on September 6, 2002. The court ordered that (1) lot owners in HLB have an easement in the parcel in question, (2) the easement is for access to the Patuxent River and for swimming, fishing, crabbing, sunbathing, launching of hand-carried boats, and picnicking, (3) appellees are authorized to remove the rip-rap placed on the property by Kobrine, L.L.C., and Dr. Arthur Kobrine, a principal in Kobrine, L.L.C., shall be responsible for the reasonable cost of removal, (4) the sale of the parcel in question from Waters et al. to Kobrine, L.L.C. is null and void and, (5) appellees' counsel shall submit a judgment transferring title to the parcel in question to the owners of the 56 lots who purchased their lots subsequent to the filing of the Declaration. The court entered such a judgment on September 9, 2002, and amended it on December 5, 2002. The judgment vested certain named individuals with undivided fee simple interests in the parcel in question, as shown on a schedule attached to the judgment.

We shall discuss additional facts as we discuss the issues.

## Appellants' Contentions

Appellants first contend that the court erred in holding that certain lot owners in HLB owned the parcel in question and in declaring Kobrine, L.L.C.'s purchase null and void. In support of that contention, appellants argue that (1) appellees abandoned the claim to ownership prior to trial and were judicially estopped from claiming it at trial, (2) the Declaration does not, by its express terms, apply to the parcel in question, (3) the Declaration does not comply with the statutory requirements applicable to the transfer of real property, and (4) the provision in the Declaration relied on by the court is void because it violates the Rule Against Perpetuities.

Second, appellants contend the court erred in concluding that the lot owners had an express easement in the parcel in question. In support of that contention, appellants argue that (1) the plat did not comply with the statutory requirements for conveying such an interest in real property, (2) the title experts testified that the plat did not provide lot owners with use rights, (3) the plat did not comply with the Statute of Frauds, and (4) the plat, Declaration, and deeds to lot owners did not create an express easement.

Third, appellants contend that the court erred in finding an implied easement. In support of that contention, appellants argue that (1) appellees were estopped because they claimed an express easement, (2) there was no evidence that the lot owners relied on the relevant documents, and (3) the court misconstrued the relevant case law and documents.

Fourth, appellants contend that the court erred in permitting appellees to remove the rip-rap from the parcel in question because it was in violation of environmental laws.

Finally, appellants contend the court erred in holding Dr. Kobrine personally responsible for payment of costs incurred in the removal of the rip-rap because he was not a party to the case.

## Appealability

■ The circuit court executed its memorandum and order on September 6, 2002, and judgment was entered on the docket on September 9, 2002. Appellants' notice of appeal was filed on or about September 13. The court executed an "amended judgment" on December 5, 2002, which was entered on the docket on December 10.

■ Generally, only final judgments are appealable. Md. Code (2002 Repl.Vol.) Courts and Judicial Proceedings, § 12–301, (hereinafter "CJ § "). In order to be final, a judgment must satisfy certain criteria, including the requirement that it must be intended by the court to be the unqualified final disposition of the matter. *Milburn v. Milburn,* 142 Md.App. 518, 523, 790 A.2d 744 (2002). A party seeking to appeal to this Court must file a notice of appeal within 30 days *after* the entry of judgment from which the appeal is taken. *See* Md. Rules 8–201, 8–202, 8–302; *see also Jenkins v. Jenkins,* 112 Md.App. 390, 399, 685 A.2d 817 (1996). A judgment must be set forth on a separate document, Md. Rule 2–601, and the judgment is effective when the separate document is recorded by the clerk. *Byrum v. Horning,* 360 Md. 23, 29, 756 A.2d 560 (2000). In the case before us, the September 6 order expressly envisioned a subsequent order to implement it. Facially, the September 6 order was not intended as an unqualified final disposition of the matter. The judgment became final on December 10, but the notice of appeal was filed before, not after, the final judgment.

■ When appropriate, an appeal can be taken pursuant to the collateral order doctrine. *See* Md. Rule 12–303. The doctrine applies when the order from which the appeal is taken conclusively determines the disputed question, resolves an important issue, is completely separate from the merits, and is effectively unreviewable on appeal. *Baltimore Police Department v. Cherkes,* 140 Md.App. 282, 298, 780 A.2d 410 (2001). Obviously, the September 6 order does not meet those requirements.

Similarly, the September 6 order cannot be treated as an appealable judgment under the savings provisions in the rules, the most nearly applicable being Md. Rule 8–602(d). *See Carr v. Lee,* 135 Md.App. 213, 226, n. 4, 762 A.2d 142 (2000).

We conclude, however, that we are able to address the issues raised on the merits, as an interlocutory appeal permitted by statute. *See* CJ § 12–303(1) (order with regard to possession of property) and CJ § 12–303(3)(iv) (order with regard to conveyance of property and the payment of money).

## Analysis

### The circuit court's opinion

Before examining appellants' contentions, it is helpful to summarize the circuit court's findings and conclusions. The circuit court found that the parcel in question is burdened by an express easement based on the following rationale. The parcel in question was described as a reserved area on the plat of section 2 of the subdivision. The deed dated September 13, 1960, from the Browns to Beltway referenced the plat and the parcel in question in its description of the property conveyed, as follows:

"All of the roads, streets, drives, paths, shore and reserved areas as shown and designated on Plats of sections One (1) and Two (2) of Harbor Light Beach Subdivision recorded in Liber A.W.R. No. 1, folio 43, and Liber J.L.B. No 1, folio 7, Plat Books of Calvert County, Maryland, subject, however, to any rights of way of record and to right of way in common to lot owners in said subdivision over the nearest street and road to the public highway and to the waters of Mill Creek and the Patuxent River in said reserved areas as shown on the aforesaid plats." (sometimes referred to as the "subject, to" language)

The Declaration, executed in 1972, provided:

"DEVELOPER, present owner of the remaining 56 lots of Harbor Light Beach, desires to set up a sound basis for maintenance of the roadways and reserved areas of Harbor Light Beach. To this end, LOT OWNERS, their heirs and

assigns of the said remaining 56 lots, will pay a 1/56th share per lot of said maintenance cost until such time as all 56 remaining lots are sold, at which time the said LOT OWN-ERS, their heirs and assigns, will accept a 1/56 fee simple interest per lot in said roadways and reserved areas, there-by relieving DEVELOPER of all liabilities relative to said roadways and beach areas."

The deed dated June 30, 1976, from Beltway to Waters *et al.* conveyed the 44 lots then remaining in the subdivision plus the parcel in question. The deed referenced the plat and the parcel in question in its description of the property being conveyed. It contained the same "subject to" language as that contained in the deed from the Browns to Beltway. The deeds to Bruce Metzger and to Kobrine, L.L.C. both refer-enced the plat in their descriptions of the property conveyed. The Metzger and Kobrine, L.L.C. deeds, while not including the specific "subject to" language cited above, explicitly state that the conveyances were "subject to all easements, cove-nants and restrictions of record" (Metzger Deed) and "subject to covenants and restrictions of record" (Kobrine L.L.C. Deed).

The circuit court determined that the Browns and Beltway, as owners and developers, created an easement for HLB lot owners by language in deeds, by referencing the recorded plat, and by the Declaration. The court specifically refer-enced the "subject, to" language in the deed from the Browns to Beltway and the subsequent deed from Beltway to Waters et al., emphasizing the language "and to right of way in common to lot owners ... to the waters of ... Patuxent River in said reserved areas as shown on the aforesaid plats." The court also pointed out that the parcel in question was delineat-ed as "reserved" on the plat of section 2. With respect to the Declaration, the court construed it as applicable to the parcel in question, based on its language, and supported by extrinsic evidence.

Alternatively, an implied easement existed, according to the court, based on the fact that the deeds from the Browns to

Beltway, and Beltway to Waters *et al.* incorporated the section 2 plat and its language; that Beltway and Waters *et al.* repeatedly referenced the plat in their conveyances to lot purchasers; and the parcel in question was covered by the terms of the Declaration.

The court's finding of an implied easement was also supported by evidence that the marketing and sale of subdivision lots was based on representations that the parcel in question was for the use of lot owners, and lot owners historically used the parcel in question for recreational purposes. Additionally, the court found that an implied easement existed based on a uniform general plan of development.

Having determined that an easement existed for the benefit of lot owners, the court determined the nature and scope of the easement by looking to relevant circumstances to determine the intent of the original grantor and to determine reasonable use by lot owners. The use was defined as access to Patuxent River and beach-related activities.

Finally, the court specifically enforced the provision in the Declaration relating to ownership of the parcel in question, declared null and void the conveyance to Kobrine, L.L.C., and transferred title to the owners of the 56 lots who purchased subsequent to the filing of the Declaration.

*Ownership*

Appellants contend that appellees were judicially estopped from pursuing a claim of ownership. We disagree. As appellees correctly point out, judicial estoppel is only applicable in cases where the party has successfully pursued one theory, but then asserts a second, contrary theory, in another action. *Gordon v. Posner,* 142 Md.App. 399, 424, 790 A.2d 675 (2002) (citing *Mathews v. Underwood-Gary,* 133 Md.App. 570, 579, 758 A.2d 1019 (2000)). "Judicial estoppel, also known as the 'doctrine against inconsistent positions,' and 'estoppel by admission,' prevents 'a party who successfully pursued a position in a prior legal proceeding from asserting a contrary position in a later proceeding.'" *Gordon,* 142 Md.

App. at 424, 790 A.2d 675 (citing *Roane v. Washington County Hosp.*, 137 Md.App. 582, 592, 769 A.2d 263, *cert. denied*, 364 Md. 463, 773 A.2d 514 (2001) (plaintiff sued in one county claiming she had necessary surgery and then sued in another county on a theory that the surgery was unnecessary)).

In the case at bar, the appellees consistently argued that they had rights to the parcel in question, namely the right to use the property and the right to ownership of an equal share of the property. Appellees included a claim of ownership in their second amended complaint. Specifically, the amended complaint asked the court to "declare that Kobrine, L.L.C. hold the title of the reserved area in trust for the lot owners and must convey the title to them at a 1/56th fee interest per lot owned as tenants in common as directed by the Declaration of Covenants." This request was renewed in appellees' trial memorandum.

Despite this language, appellants assert that any claim of ownership was waived by counsel for appellees at the hearing on the motion for summary judgement. Appellees cite several cases for the proposition that an attorney can bind his or her client by admissions made in open court. *See, e.g., Salisbury Beauty Schools v. State Board of Cosmetologists*, 268 Md. 32, 45, 300 A.2d 367 (1973). While we agree in principle that an attorney can bind his or her client, we do not believe that proposition is dispositive in this case. Appellees' counsel was clear that appellees were asking for rights to use the property, either via ownership vesting in each homeowner as tenants in common, or by imposing a constructive trust. At the hearing on the motion for summary judgement, appellees requested Kobrine, L.L.C. to "convey 55/56ths of it back to us, or whatever our proportionate share is, we would be glad to enforce it ourselves, police it, and make sure that it is used in compliance with the law." Appellees wanted to share ownership of the property among all of the residents, including appellants.

This is exactly what the court stated in the introduction to its memorandum and order. The circuit court understood

that "[t]his case involves a dispute concerning ownership of a parcel of land (hereinafter referred to as 'the Property'). The Court must also determine if an easement encumbers the Property." Thus, it is clear that the court addressed the question of ownership, which was not waived by the appellees because they maintained that they owned collectively 55/56ths of the property, divided equally among the members of the subdivision.

 As for the merits of the ownership issue, appellants assert that they own the parcel in question via the deed from Waters, *et al.* to Kobrine, L.L.C. Appellants, applying contract principles, claim that the Declaration is unambiguous and does not give any rights in the parcel in question to any of the other lot owners. As an unambiguous contract, appellants state that the court could only look at the four corners of the document to determine the scope of its application. Because the preamble to the Declaration did not specifically mention the parcel in question, appellants assert that it does not apply to that property.

The circuit court applied contract principles but determined that "the Declaration appeared ambiguous because the reserved area did not appear in the Preamble but was mentioned in the body of the Declaration under the 'General' covenants." The circuit court treated the Declaration as a contract to convey the reserved areas. *See Namleb Corp. v. Garrett,* 149 Md.App. 163, 174, 814 A.2d 585 (2002) (citing *Colandrea v. Wilde Lake Community Ass'n,* 361 Md. 371, 395–96, 761 A.2d 899 (2000)) ("a restrictive covenant is contractual in nature, and a suit to enforce it is in the nature of specific performance"); *accord Chesapeake Brewing Co. v. Goldberg,* 107 Md. 485, 69 A. 37, (1908).

Having determined that the Declaration was ambiguous, the circuit court properly looked to extrinsic evidence to determine its meaning. *See Coopersmith v. Isherwood,* 219 Md. 455, 460, 150 A.2d 243 (1959) ("The general principle in the construction or interpretation of contracts that the intention of the parties must be gathered from the contents, phraseology,

and words of the document itself, unless there is some ambiguity in its language, is too elementary to need citation of authority. Only when the language or words, used in their ordinary sense, are vague, doubtful, or have two meanings may extrinsic evidence be used to determine the intention of the parties."); *accord Calomiris v. Woods*, 353 Md. 425, 435–37, 727 A.2d 358 (1999); *Canaras v. Lift Truck Services, Inc.*, 272 Md. 337, 350, 322 A.2d 866 (1974); *Little v. First Federated Life Ins. Co.*, 267 Md. 1, 5, 296 A.2d 372 (1972); *Admiral Builders Savings and Loan Asso. v. South River Landing*, 66 Md.App. 124, 129–31, 502 A.2d 1096 (1986). "This conclusion is reinforced, moreover, if we observe the rule that the intention of the parties must be garnered from the terms of the contract considered as a whole, and not from the clauses considered separately." *Kasten Constr. Co. v. Rod Enterprises, Inc.*, 268 Md. 318, 329, 301 A.2d 12 (1973) (citing *Perper v. Fayed*, 247 Md. 639, 234 A.2d 144 (1967); *Wheaton Triangle Lanes v. Rinaldi*, 236 Md. 525, 204 A.2d 537 (1964); *Sagner v. Glenangus Farms*, 234 Md. 156, 198 A.2d 277 (1964); *Walton v. Washington County Hospital Association*, 178 Md. 446, 13 A.2d 627 (1940)).

█ The circuit court observed that appellants' position "seeks to construe the Preamble in isolation and fails to consider the Declaration as a whole entity." The circuit court stated that appellants' view conflicted with the aims of a general scheme for treatment of the reserved areas. The circuit court noted that the subdivision roadways were not included in the preamble either but that the plan to maintain the reserved areas and roadways would be vitiated if it did not apply to any roads. Thus, the circuit court concluded that the Declaration, although ambiguous, could be understood if extrinsic evidence were used to determine its meaning:

> [The extrinsic evidence] which supports the Court's determination that the Declaration includes the Property, is that the Developer, Beltway, who filed the Declaration in 1972, used the plat, showing the reserved area to Mr. Powell, who purchased a lot that year. This conduct by the Developer is consistent with the inference that Beltway intended to have

purchasers rely on the reserved area easement and that Beltway interpreted the Declaration as providing for the easement in the area reserved for lot owners.

■ Whether a contract is ambiguous is a question of law, which we review *de novo*. *See Calomiris v. Woods*, 353 Md. at 434, 727 A.2d 358 (citations omitted). We concur with the circuit court's conclusion that the Declaration is ambiguous. This conclusion is supported by the fact that the scheme for maintenance of the subdivision's reserved areas is stated in the body of the document, but none of the reserved areas are listed in the preamble. *See Calomiris*, 353 Md. at 435–36, 727 A.2d 358 ("a written contact is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning") (citations omitted).

■ "Where the language is ambiguous, the court must then determine the intent and purpose of the parties at the time the contract was made, which is a question of fact." *Anne Arundel County v. Crofton Corp.*, 286 Md. 666, 673, 410 A.2d 228 (1980) (citing *H & R Block, Inc. v. Garland*, 278 Md. 91, 98, 359 A.2d 130 (1976); *Canaras v. Lift Truck Services, Inc.*, 272 Md. 337, 352, 322 A.2d 866 (1974); *Dorsey v. Hammond*, 1 H. & J. 191, 201 (1801)). Like any other question of fact, our review on this point is under a clearly erroneous standard, insuring that there was sufficient evidence to support the conclusion drawn. *See, e.g., Colandrea*, 361 Md. at 394, 761 A.2d 899. The extrinsic evidence was sufficient to support the circuit court's conclusion that the parcel in question was subject to the restrictions contained in the Declaration.

■ Having determined that the Declaration was ambiguous, and finding no error in the circuit court's determination that the parcel in question was covered by the restrictions therein, we need only assess whether the remedy given was appropriate. We note that, in contract law, relief can be in the nature of monetary damages, injunctions, or specific performance. Restatement (Second) of Contracts, § 345. Specific performance is an allowable remedy to enforce a covenant.

*See, e.g., Colandrea,* 361 Md. at 395–96, 761 A.2d 899 ("Generally, covenants affecting property are, even when running with the land, nonetheless contractual in nature. A suit to enforce them is in the nature of specific performance."); *accord Namleb,* 149 Md.App. at 174, 814 A.2d 585. We have long held that specific performance is granted at the discretion of the trial court.

> Specific performance is not a matter of absolute right in the party but of sound discretion in the court. This discretion is not, however, arbitrary; and where the contract is, in its nature and circumstances, unobjectionable—or, as it is sometimes stated, fair, reasonable and certain in all its terms—it is as much a matter of course for a court of equity to decree specific performance of it as it is for a court of law to award damages for its breach.

*Glendale Corp. v. Crawford,* 207 Md. 148, 154, 114 A.2d 33 (1955); *accord Steele v. Goettee,* 313 Md. 11, 23, 542 A.2d 847 (1988).

To address fairness and reasonableness, we turn to the case of *Glendale,* 207 Md. at 151, 114 A.2d 33, in which the homeowners, the Crawfords, agreed to purchase property in a subdivision for the purpose of building their home. Just before settlement, the Crawfords sought to rescind their promise to purchase the land because it was graded more steeply than they had first been led to believe and, as such, was unsuitable for their home. *Id.* The severity of the grading problems could be seen when the Crawfords' lot was compared with the adjacent lot, which had been cut down to such a degree that the roof of the home built on that lot would be level with the Crawfords' ground floor. *Id.* at 152, 114 A.2d 33. Although the owners of the adjacent lot did their own grading of their land, their plans were submitted for approval to the subdivision developer, Glendale. *Id.* The approval procedures to be followed by Glendale were outlined in a recorded document imposing restrictive covenants. *Id.* at 153, 114 A.2d 33.

The circuit court concluded that no reasonable person would buy a lot if that lot would tower above an adjacent home. *Id.* The Court of Appeals concurred, holding that specific performance to enforce the promise to purchase the lot was an undue hardship, considering the grading of the land. *Id.* at 159, 114 A.2d 33. Relying on the settled principle that the fairness of the deal is to be determined at the time of the making of the contract, the court concluded that specific performance would be unfair. *Id.* at 154–55, 114 A.2d 33. This is because Glendale promised to approve grading schemes according to the guidelines set forth in the restrictive covenant, and it failed to adhere to its restrictions. *Id.* The Court based its decision on the following principle:

> [W]here statements of fact which are essentially connected with the subject of the transaction (and are not mere expressions of opinion, hope or expectation, or mere general commendations), "and especially where they are concerning matters which, from their nature or situation, may be assumed to be within the knowledge or under the power of the party making the representation, the party to whom it is made has a right to rely on them, he is justified in relying on them, and in the absence of any knowledge of his own, or of any facts which should arouse suspicion and cast doubt upon the truth of the statements, he is not bound to make inquiries and examination for himself."

*Id.* at 155–56, 114 A.2d 33 (citation omitted). In other words, the Crawfords had relied on the restrictive covenant and were entitled to do so. *Id.* The Crawfords expected the land to be kept in its natural state according to the approval procedures set forth in the restrictive covenant. *Id.* Thus, it would be unfair to require the Crawfords to buy the property they had promised to purchase. *Id.*

Similarly, in the case at bar, the developers promised in the Declaration to give the reserved areas to the lot owners once all of the lots were sold. In its memorandum and order, the circuit court recognized that "[t]he Declaration is captioned Covenants, Restrictions and Conditions, which 'control lot owners acquiring title to . . . lots subsequent to the record-

ing of these covenants.'" The appellees in this case were entitled to rely upon that Declaration. Like the covenant in *Glendale Corp.*, the Declaration in the *case sub judice* should be given its full effect because it is "connected with the subject of the transaction" and "within the knowledge or under the power of the party making the representation." *Id.* The developers promised to convey the property to the lot owners once all 56 lots were sold. This was within the control of the developers, as they held title to the reserved areas. The lot owners were entitled to rely upon the Declaration, which stated that the parcel in question would be theirs after all the lots were sold. Thus, we hold that it was fair for the circuit court to use specific performance to remedy the breach of contract to convey the parcel in question to the lot owners.

We also hold that specific performance is a reasonable remedy in this situation. In *Glendale Corp.*, the hardship of specific performance was analyzed to determine if requiring the Crawfords to buy the land was reasonable. *Id.* at 158, 114 A.2d 33. The Court stated that the developers were in the business of buying and selling land and could, even with the grading, resell the property. *Id.* The Crawfords, on the other hand, would be severely prejudiced if they had to buy the land according to their contract, and then spend the money to re-grade it, or redesign their house because of the current grading. *Id.* The Court of Appeals, in *Glendale Corp.*, put it simply: "the property would be useless to the Crawfords." *Id.* In the case before us, specific performance of the covenant to convey is reasonable because the subdivision was created and lots therein conveyed with the intention and expectation that the parcel in question would be owned as common property. It is reasonable for a community as a whole to own, use, and maintain common property. *See* Restatement (Third) of Property: Common Interest Communities § 6.6 cmt. a (2000). Thus, it was reasonable for the circuit court to effectuate the intent of the Declaration by ordering specific performance.

Finally, "[t]o be specifically enforced, a contract for the sale of real property must be definite and certain in its

terms." *Excel Co. v. Freeman*, 252 Md. 242, 247, 250 A.2d 103
(1969) (citing *Silverman v. Kogok*, 239 Md. 71, 77, 210 A.2d
375 (1965); *Grooms v. Williams*, 227 Md. 165, 170, 175 A.2d
575 (1961); *Globe Home Impvt. Co. v. Brothers*, 204 Md. 73,
75–76, 102 A.2d 748 (1954)).

■ Appellants claim that the Declaration is too vague to
be specifically enforced. The Declaration, although found to
be ambiguous with respect to which properties are subject to
its provisions, is sufficiently certain with respect to the agree-
ment to convey reserved property to the lot owners. As we
stated above, the circuit court resolved the ambiguity using
extrinsic evidence. It was within the power of the circuit
court to grant specific performance so long as it was fair,
reasonable, "definite and certain in its terms." *Excel Co.*, 252
Md. at 247, 250 A.2d 103,

■ In *County Comm'rs v. St. Charles Assocs.*, 366
Md. 426, 446, 784 A.2d 545 (2001), the Court of Appeals
recently addressed restrictive covenants. The Court reiterat-
ed the long-standing rule:

> Whether a restrictive covenant is personal to a grantee or a
> grantor, or to both, or binds their respective successors in
> title, and so the land by whomever owned from time to time,
> as well as whether a grantor intended to bind land retained
> by him, is a question of *intention*, which may be ascertained
> from the language of the conveyances alone or from that
> language together with other evidence of intent.

*Id.* (emphasis added). We conclude that the terms of the
Declaration were sufficiently definite and certain, and the
intention to convey the parcel in question to lot owners was
supportable by the evidence. "A contract is not rendered
unenforceable merely because the parties do not supply every
conceivable detail or anticipate every contingency that may
arise." *Scheffres v. Columbia Realty Co.*, 244 Md. 270, 285,
223 A.2d 619 (1966) (citations omitted).

> Rather, [t]he agreement will be sustained if the meaning of
> the parties can be ascertained, either from the express
> terms of the instrument or by fair implication. The law

does not favor, but leans against the destruction of contracts because of uncertainty; therefore, the courts will, if possible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained.

*Id.* at 286, 223 A.2d 619.

In *Steele v. Goettee,* 313 Md. 11, 13, 542 A.2d 847 (1988), there was a sale in gross of a parcel of land. A specific piece of property, in this case a home in Annapolis and the land upon which it sat, was sold with no guarantees as to its exact size. *Id.* at 20–21, 542 A.2d 847. After the contract for sale was signed, the property was surveyed, and it appeared that more land than the seller thought he was selling was, in fact, covered by the description. *Id.* at 17, 542 A.2d 847. The seller asked for more money, and the buyer refused. *Id.* The circuit court decreed specific performance of the sale, this Court reversed, and the Court of Appeals upheld the circuit court's ruling. *Id.* at 17–18, 542 A.2d 847. The Court of Appeals reasoned that a buyer is entitled to assume that the seller knew how much property he was selling, even if he did not guarantee its size but rather sold it in gross. *Id.* at 22, 542 A.2d 847. Thus, the Court of Appeals upheld the specific performance of the contract of sale, despite the fact that the contract did not clearly define the property to be sold. *Id.* at 28, 542 A.2d 847. The Court of Appeals noted, however, that the intention of the seller was to sell a specific property, even though the property's physical description was not at all definite. *Id.* at 25–26, 542 A.2d 847.

Similarly, in the case before us today, the "reserved areas" are not perfectly defined. Appellants point to the dashed line on the plat to which the deeds to Kobrine, L.L.C. and others refer. The circuit court found, however, that this line was sufficiently accurate to define the property. As in the *Steele* case, we concur with the trial judge, who determined that the property to be conveyed was sufficiently described to afford specific performance of the promise to convey.

In addition, the property was described with the reasonable certainty necessary to satisfy the threshold for conveyancing documents, as set forth in the Real Property Article of the Maryland Code. *See* Md.Code (1996 Repl.Vol., 2003 Supp.), § 4–101(a)(1) of the Real Property Article ("Any deed containing the names of the grantor and grantee, a description of the property sufficient to identify it with reasonable certainty, and the interest or estate intended to be granted, is sufficient, if executed, acknowledged, and, where required, recorded."). The Declaration was signed and acknowledged and described the reserved areas.

The result we reach here is consistent with the common practice in the development of subdivisions for developers to convey common areas to the community as a whole, especially for use and maintenance. *See, e.g., St. Charles Assocs.,* 366 Md. at 430–31, 784 A.2d 545; *see also* Restatement (Third) of Property: Common Interest Communities § 6.6 (2000). Generally, the developer promises that when all the lots are sold, he or she will deed the property to the land owners, usually in the form of a homeowner's association. *See* Restatement (Third) of Property: Common–Interest Communities § 6.6, cmt. a (2000); *accord Ridgely Condo. Ass'n v. Smyrnioudis,* 343 Md. 357, 359, 681 A.2d 494 (1996) (citing *Nahrstedt v. Lakeside Village Condo.,* 8 Cal.4th 361, 33 Cal.Rptr.2d 63, 878 P.2d 1275, 1281 (1994) ("Use restrictions are an inherent part of any common interest development and are crucial to the stable, planned environment of any shared ownership arrangement.")). Although there was some indication that HLB homeowners intended to create a community association to address, in part, the maintenance of common areas, as the Third Restatement of Property indicates (as a preface to all of its comments on the subject), a homeowner's association is not required to maintain the community property. "For ease of discussion, the balance of these Comments refers solely to actions by an association, but it refers equally to community members acting collectively." Restatement (Third) of Property: Common–Interest Communities § 6.6 cmt. a (2003). The new section on Common–Interest Communities was added in

the Third Restatement because, as the Director of the American Law Institute wrote, "the law in this field until now has lagged behind social life." Restatement Third of Property: Foreword to Servitudes, p. IX (2000). Our decision today reflects the fact that although the "underlying law is largely judge-made," the results obtained further the purpose of common interest communities so long as these cases are decided "according to established and fair procedures." *Id.*

Cases decided by other courts are consistent with the notion that it is fair to have common areas in communities owned or controlled, collectively, by the homeowners. *See, e.g., Lee–Davis v. Dauphin Surf Club Ass'n*, 581 So.2d 1110, 1111 (Ala.Civ.App.1991) (title to common areas rests in the community collectively and the community can decide to lease mineral rights found in that common area); *Ochs v. L'Enfant Trust*, 504 A.2d 1110, 1115–16 (D.C.1986) (interpreting D.C.Code § 45–1848(b) (1981), first enacted, in part, in 1973, *see* 1973 Ed., D.C.Code § 5–1248, discussing communal control and governance of condominiums); *Juno by the Sea North Condominium Ass'n (The Towers) v. Manfredonia*, 397 So.2d 297, 304 (Fla.Dist.Ct.App.1980) (association can adopt any reasonable rules within the powers given to them by the homeowners in the by-laws); *334 Barry in Town Homes, Inc. v. Farago*, 205 Ill.App.3d 846, 850–51, 150 Ill.Dec. 729, 563 N.E.2d 856 (Ill.App.1990) (injunction is proper remedy for a homeowner who parked in a common area not designated for parking); *Board of Managers of Hudson View West Condominium v. Hudson View Towers Assoc.*, 182 A.D.2d 404, 582 N.Y.S.2d 142, (N.Y.App.Div.1992) (community could compel removal of produce stands in common area since it violated restrictive covenants); *Posey v. Leavitt*, 229 Cal.App.3d 1236, 280 Cal. Rptr. 568, 578 (1991) ("Encroachment is an obstruction to the free use of the common area, and is itself the nuisance."); *Grey v. Coastal States Holding Co.*, 22 Conn.App. 497, 578 A.2d 1080, 1083–84 (1990) (owners who erect extra stories on to their condominiums are in violation of the restrictive covenants on common space); *see also* Paula A. Franzese, *Does It*

*Take A Village? Privatization, Patterns of Restrictiveness and The Demise of Community,* 47 Vill. L.Rev. 553 (2002).

■ Finally, appellants contend that the agreement to convey in the Declaration is void because it violates the Rule Against Perpetuities. Appellants cite *Dorado Limited Partnership v. Broadneck Development Corporation,* 317 Md. 148, 150, 562 A.2d 757 (1989), for the proposition that a contract for the sale of land is subject to the Rule Against Perpetuities. We believe the *Dorado* case is distinguishable from the case at bar.

The facts in *Dorado* dictate its specific outcome. In that case, the Dorado Limited Partnership ("Dorado") gave a one year option to purchase several lots of land in Anne Arundel County to Broadneck Development Company ("Broadneck"). *Id.* at 150, 562 A.2d 757. The relevant provision in the option contract[2] stated that Broadneck would purchase the lots no later than ninety days after Dorado delivered proof that the county granted sewer allocations for each of the lots. *Id.* The Court of Appeals held that this provision violated the Rule Against Perpetuities because it was uncertain whether the land would be purchased by Broadneck within twenty-one years plus a life in being. *Id.* at 153, 158–59, 562 A.2d 757. This violation occurred because Anne Arundel County might not have granted sewer allocations for those lands within the required amount of time in light of the fact that there was a county-wide moratorium on sewer permits at the time of the contract. *Id.* at 153, 562 A.2d 757. Thus, title in Broadneck might have vested outside of the time allowable by the Rule Against Perpetuities. *Id.* The Court of Appeals stated that, "where the occurrence of the condition precedent to conveyance is beyond the control of the parties, a reasonable time for performance, less than the perpetuities period, cannot be implied." *Id.* at 158, 562 A.2d 757. Therefore, because the condition precedent to the vesting of title was within the

---

**2.** The option contract to convey the property discussed in *Dorado* was amended several times. *Dorado,* 317 Md. at 150, 562 A.2d 757. Our comments refer to the final version.

control of Anne Arundel county, and not the parties themselves, the Court of Appeals held that the promise to convey the property violated the Rule. *Id.* at 159, 562 A.2d 757.

As we clarified in *Brown v. Parran,* 120 Md.App. 653, 655, 664, 708 A.2d 12 (1998), however, if the condition precedent to the vesting of title is within the control of one of the parties, then a reasonable time, less than the time limit set by the Rule Against Perpetuities, can be implied. In *Brown,* title in the subject property was conditioned upon completion of water percolation tests, as well as the issuance of building permits. *Id.* at 659, 708 A.2d 12. Although the trial court found that the Rule Against Perpetuities was violated because the contract contained no time period (less than a life in being plus 21 years) in which to fulfill the conditions, this Court reversed, stating that if the conditions are within the control of the parties, a reasonable time less than the perpetuities period would be implied. *Id.* at 659, 662, 708 A.2d 12.

In deciding *Brown,* we relied upon our ruling in *Hays v. Coe,* 88 Md.App. 491, 505, 595 A.2d 484 (1991), in which we indicated that a reasonable time period less than the perpetuities period could be implied even if the contract did not specify that the future condition would be met "within a reasonable time." *Brown,* 120 Md.App. at 661, 708 A.2d 12 (citing *Hays,* 328 Md. at 362, 614 A.2d 576). Although *Hays* was later vacated on other grounds, *Coe v. Hays,* 328 Md. 350, 362, 614 A.2d 576 (1992), the Court of Appeals expressly held that this Court was correct in its interpretation of the Rule Against Perpetuities. *Hays,* 328 Md. at 362, 614 A.2d 576.

Additionally in *Brown,* we cited *Stewart v. Tuli,* 82 Md.App. 726, 736, 573 A.2d 109 (1990), a case in which the future condition to be fulfilled was contained in an addendum to the contract of sale. *Brown,* 120 Md.App. at 660–61, 708 A.2d 12. We stated that the addendum in *Stewart* indicated that the sale was conditioned upon receipt of clear title and acknowledged a previous contract to sell the land, a potential cloud on that title. *Id.* at 660–61, 708 A.2d 12 (citing *Stewart,* 82 Md.App. at 736, 573 A.2d 109). We reasoned that although

the future condition, *i.e.*, delivery of clear title, was not certain to occur within a life in being plus 21 years, the parties contemplated the condition would be met within a reasonable period of time. *Id.* (citing *Stewart*, 82 Md.App. at 736, 573 A.2d 109). This was unlike the sewer allocation in the *Dorado* case because the fulfillment of that condition was not within the control of the parties, because Anne Arundel County had to lift its moratorium on the issuance of sewer permits before either party could effectuate the vesting of title. *Id.* at 661, 708 A.2d 12 (citing *Dorado*, 317 Md. at 150, 562 A.2d 757). Finally, quoting *Stewart*, we stated that "[i]t would be ridiculous to suggest that a reasonable period of time would exceed a life in being and 21 years." *Id.* (citing *Stewart*, 82 Md.App. at 736, 573 A.2d 109). Applying this reasoning to the case at bar, a reasonable time can be implied so that the Declaration in this case can be specifically enforced without violating the Rule Against Perpetuities.

 In addition, we have held that "the intent of the grantor must be ascertained before determining whether the Rule Against Perpetuities applies." *Stewart*, 82 Md.App. at 735, 573 A.2d 109. We have repeatedly stated that "a contract 'should be interpreted if feasible to avoid the conclusion that it violates the Rule Against Perpetuities ... under the doctrine that a construction should be favored which gives effect to intention rather than one which defeats it.' " *Id.* at 735–36, 573 A.2d 109 (citations omitted). Even if the Rule Against Perpetuities might otherwise apply to the agreement to convey contained in the Declaration in this case, we believe the developer's intention would mandate not applying the rule. It would be inconsistent with that intention to hold that the provision in the Declaration, requiring that the parcel in question be owned and used by the community, is invalid because it may take longer than a life in being plus 21 years to convey all the lots in the subdivision. This observation is secondary, however, to our ruling that this case is governed by the analysis in *Brown* and *Stewart, supra*.

*Easement*

Again, appellants erroneously claim that judicial estoppel bars appellees from asserting easement rights to the property. As stated above, judicial estoppel applies only in cases in which the party succeeded on one theory and then pursued a different theory. *Gordon,* 142 Md.App. at 424, 790 A.2d 675 (citing *Mathews,* 133 Md.App. at 579, 758 A.2d 1019). Additionally, appellees never abandoned their claim of a right to use the property. Thus, the issue of whether there is an easement over the parcel in question was properly before the circuit court.

Because an easement in any form, express or implied, is a right to use the land, all lot owners in HLB who hold title to the property, their heirs and assigns, already have a right to use the parcel in question by virtue of their tenancy in common. *See, e.g., Winner v. Penniman,* 35 Md. 163, 166 (1872) ("Tenants in common of a chattel have each an equal right in the possession." (citation omitted)). The circuit court found that an easement also burdens the parcel in question and "obligates the possessor not to interfere with the uses authorized by the easement." *See* Restatement (Third) of Property: Servitudes § 2.1 (2000).

The circuit court began its analysis by pointing to language in *Boucher v. Boyer,* 301 Md. 679, 688, 484 A.2d 630 (1984), where the Court of Appeals stated that "easements by implication can be created in a variety of ways, such as by prescription, necessity, the filing of plats ..." *See also* Restatement (Third) of Property: Servitudes § 2.1 (2000). Although the easement over the property in question may have been created expressly, or by any of the various methods of implication, we need only address the one most obvious in this case: an implied easement created by the general-plan development. We hold that the evidence was sufficient to support the circuit court's finding in that regard.

We arrive at this conclusion by looking first at *Steuart Transp. Co. v. Ashe,* 269 Md. 74, 88, 304 A.2d 788 (1973). In *Steuart,* the Court of Appeals reviewed the long history of

the law addressing easements over common areas in planned communities. *Steuart*, 269 Md. at 88, 304 A.2d 788. The general rule in Maryland is:

> [I]f in such a case it appears that it was the intention of the grantors that the restrictions were part of a uniform general scheme or plan of development and use which should affect the land granted and the land retained alike, they may be enforced in equity; that covenants creating restrictions are to be construed strictly in favor of the freedom of the land, and against the person in whose favor they are made; and that the burden is upon one seeking to enforce such restrictions, where they are not specifically expressed in a deed, to show by clear and satisfactory proof that the common grantor intended that they should affect the land retained as a part of a uniform general scheme of development.

*Id.* Thus, the determination of whether an implied easement, based on a uniform plan of development, exists in a particular community is made by looking at the intent of the grantor. The Court of Appeals explained that "the intention to establish a uniform scheme or plan of development with restrictions is a matter of intention of the parties. This intention may be 'indicated in many ways' and the 'whole question becomes a question of fact to be determined from all the circumstances in the case.'" *Id.* at 89, 304 A.2d 788 (citing *Scholtes v. McColgan*, 184 Md. 480, 489, 41 A.2d 479, (1945)).

In *Steuart*, the Court of Appeals affirmed the circuit court's decision to grant a permanent injunction against Steuart Transportation Company, prohibiting it from docking oil barges at a pier in front of a residential community in which Ashe and other residents lived. *Id.* at 75, 76, 87, 99, 100, 304 A.2d 788. Although the Company owned three lots in the residential community, the Court of Appeals stated that its use of the land abutting the water to moor oil barges violated an implied easement for recreational use that burdened the waterfront lots. *Id.* at 77–78, 304 A.2d 788. The implied easement was created, reasoned the Court, by two separate documents, recorded just after the subdivision was created. *Id.* at 72–82, 304 A.2d 788.

The Court of Appeals held that the circuit court's findings of fact with respect to the intention to create such an easement were supported by the evidence. *Id.* at 89, 304 A.2d 788. The circuit court found that the subdivision was comprised of two sections, and the restrictive covenants in one likely were intended to be similar to those applicable in the other. *Id.* The subdivision plat taken together with the documents imposing restrictive covenants indicated that they were supposed to compliment each other, and their joint intent was to create a common area for the residents. *Id.* The restrictive covenants mentioned the fact that the homeowners would be bound by the covenants if they took their land with notice of them. *Id.* The first deed after the creation of the restrictive covenants cited the recorded plat, thereby incorporating by reference the general intent of the developer to bind each lot owner to the covenants. *Id.* at 89–90, 304 A.2d 788. The circuit court concluded that the developer intended to reserve the parcel in question for communal use. *Id.* at 90, 304 A.2d 788.

The Court of Appeals quoted from *Turner v. Brocato* as follows:

It is established that the jurisdiction of equity to enforce certain rights in respect of land is not necessarily dependent upon technicalities which are so important at law, such as, does the covenant run with the land and the extent of the running of the benefits and burdens? Equity acts under the rule laid down in *Tulk v. Moxhay*, 11 Beav. 571 (2 Phila. 774), where a covenant by the grantee of a piece of land to use it as a private square was enforced against a purchaser from the grantee with notice. The Lord Chancellor said the question was not " * * * whether the covenant ran with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased." His answer to the question was this: " * * * If an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased." This Court agreed with that answer in *Newbold v. Peabody Heights*

*Co.,* 70 Md. 493, 502, 17 A. 372. Again, in *Levy v. Dundalk Co.,* 177 Md. 636, 646, 11 A.2d 476, Judge Parke said for the Court: "Under such circumstances, the equity which is attached to the property is not detached by the transmission of title."

*Steuart,* 269 Md. at 90–91, 304 A.2d 788 (citing *Turner v. Brocato,* 206 Md. 336, 346, 111 A.2d 855 (1955)).

*Steuart* is directly applicable to the case at bar. In this case, as in *Steuart,* there is a document that imposes a restriction on the use of the parcel in question. The Declaration, along with the recorded plat, puts all subsequent purchasers of land in the subdivision on notice of the area reserved for recreation. In 1999, when Kobrine, L.L.C. purchased the parcel in question, his deed from Waters, *et al.,* stated the land conveyed was "[a]ll that land which is shown and designated as 'AREA RESERVED FOR THE USE OF LOT OWNERS.' " In addition, the deed from Beltway to Waters, *et al.,* specifically stated that among the parcels conveyed was:

(7) All of the roads, streets, drives, paths, parks, shore and reserved areas as shown and designated on Plats of Section One (1) and Two (2) of Harbor Light Beach subdivision recorded in Liber A.W.R. No 1, folio 43 and liber J.L.B. No. 1, folio 7, Plat Books of Calvert County, Maryland, subject, however, to any rights of way of record and to right of way in common to lot owners in said subdivision over the nearest street and road to the public highway and to the waters of Mill Creek and the Patuxent River in said reserved areas as shown on the aforesaid plats.

Kobrine, L.L.C. was on notice of the implied easement in favor of lot owners, created by the common plan of development, represented on the recorded plat. Thus, the circuit court's finding that "subdivision owners/developers Brown and Beltway created an easement for the lot owners of Harbor Light Beach in the Property utilizing deeds, references to a recorded plat, and by the recording of the Declaration" is supported by the evidence. The circuit court concluded that

this was sufficient notice to all subsequent purchasers that the developers intended to reserve the area in question for the use of all the lot owners. The circuit court, like the lower court in *Stewart,* looked at extrinsic evidence to support its conclusion:

> Any conceivable uncertainty of the owners'/developers' intent is removed by examining the sale and marketing of the subdivision by Beltway and Waters. Furthermore, the historical use of the Property by the lot owners supports a conclusion that the developers agreed that the reserve area was in fact reserved for the use of the lot owners and the easement was intended to be part of the overall general plan of development for the subdivision.

Using a similar extrinsic evidence and constructive notice approach, the Court of Appeals in the recent case of *St. Charles Assocs.,* 366 Md. at 443, 784 A.2d 545, affirmed the existence of covenants in a subdivision in Charles County. There, the Interstate General Company, predecessor in title to the St. Charles Association, and the United States Department of Housing and Urban Development, decided to create a subdivision called St. Charles Communities. *Id.* at 432, 784 A.2d 545. The Charles County Commissioners and the developers fought over how many residential lots in the subdivision would need waste water treatment from the Mattawoman waste water treatment plant. *Id.* at 434–36, 784 A.2d 545. The parties involved agreed on a settlement of their differences and crafted a settlement agreement which said that: "It is the further intent of the parties hereto, to provide certainty to SCA and the County regarding the number of residential units to receive water and sewer allocations each year." *Id.* at 436, 784 A.2d 545. The settlement agreement expressly stated the parties' intent that the promises run with the land. *Id.* Despite this agreement, however, a dispute about the municipal waste water treatment plant arose after deeds, referencing this agreement, were granted to new residential lot owners. *Id.* at 435, 784 A.2d 545. The Court of Appeals held that the settlement agreement was binding and restricted the rights of any homeowners who purchased their property after the

agreement because it created covenants that ran with the land.

> We hold that the deeds conveying the real property at issue here, while lacking express reference to the 1989 Agreement, were valid grants and assignments and by their terms encompassed any rights and obligations running with the land burdening or benefitting the parties as laid out in the recital or provisions of the 1989 Agreement recorded among the Land Records of Charles County. We arrive at the holding by construing the deeds in their entirety and the facts, circumstances, and intentions of the parties related to these conveyances, despite the fact that the initial deeds may make no express subject matter reference to the 1989 Agreement itself.

*Id.* at 467, 784 A.2d 545. The Court of Appeals stated that, when the intent of the parties (expressly determinable through extrinsic evidence) is that covenants run with the land, a court will effectuate that intention against all purchasers with constructive notice of the restrictions.

Although appellants argue in their brief, as they did below, that the case of *Schovee v. Mikolasko,* 356 Md. 93, 737 A.2d 578 (1999), is controlling, we agree with the circuit court that *Schovee* is not applicable. In *Schovee,* homeowners in the Chapel Woods II subdivision sued the developer and its vice president, Mikolasko, who divided his own parcel and another 50 acre section (Lot 7) in the subdivision into a new planned development. *Id.* at 98–99, 737 A.2d 578. The Schovees and other homeowners sued because they believed Lot 7 was subject to a covenant restricting all the lots in the "community" to at least 3 acres in size with only one home. *Id.* at 97, 737 A.2d 578. The litigation turned on which lots were included in the "community," and thereby restricted by the covenants. *Id.* at 98, 737 A.2d 578. The covenants were contained in a Declaration filed contemporaneously with the subdivision plat and referenced in all the relevant deeds. *Id.* at 96, 98, 737 A.2d 578.

The main difference between *Schovee* and the case at bar is that the circuit court in this case determined that the Declaration addressed the parcel in question. In *Schovee,* the Declaration unambiguously "establishe[d] with virtually unimpeachable clarity both that [the developer] did not intend to subject Lot 7 to the restriction imposed on Lots 1 though 5 and 8 through 25, and that the purchasers of those lots knew, at least constructively, that Lot 7 was excluded from the Declaration." *Id.* at 113, 737 A.2d 578. The circuit court's finding that an implied easement existed and should be enforced to effectuate the intent of the developers to create a common interest community is supported by the evidence.

## Environmental Laws

The circuit court permitted use of the lot but did not purport to interpret or rule on the applicability of environmental laws. Rather, the circuit court concluded that "all the lot owners who testified, except Dr. Kobrine, testified that the historic use of the Property was for swimming, fishing, nature walks and picnics." In keeping with this finding, the circuit court ordered the rip-rap erected by Kobrine, L.L.C. be removed from the land. The circuit court further found that "all the witnesses agreed that some erosion had occurred, but differed as to the significance and degree of this problem." The circuit court' s ruling is subject to all applicable laws relating to the environment. The effect of those laws was not decided below and is not before us. The effect, if any, of environmental laws may be litigated in circuit court.

## Payment of Costs

We reverse that portion of the circuit court's order requiring Dr. Kobrine, personally, to pay costs for removal of the rip-rap from the property in question. Dr. Kobrine is not a party to this action; rather Kobrine, L.L.C. is the party. We note that "a court may not enter a valid judgment against a person unless it has acquired personal jurisdiction over that person." *Hagler v. Bennett,* 367 Md. 556, 561, 790 A.2d 6 (2002). Although we have acknowledged that misnomers in

the service of process can be corrected so long as notice has been given to the appropriate person, the circuit court may not enforce a judgment against a non-party. *Id.* (citing *McSwain v. Tri–State Transportation,* 301 Md. 363, 483 A.2d 43 (1984); *Harford Mutual Insurance Co. v. Woodfin Equities Corp.,* 344 Md. 399, 687 A.2d 652 (1997); *Dart Drug Corp. v. Hechinger Co.,* 272 Md. 15, 320 A.2d 266 (1974); *Abromatis v. Amos,* 127 Md. 394, 96 A. 554 (1916); *W.U. Tel. Co. v. State,* 82 Md. 293, 33 A. 763 (1896); *Hill v. Withers,* 55 Wash.2d 462, 348 P.2d 218 (1960), *Enserch Corp. v. Parker,* 794 S.W.2d 2 (1990); *Leonard v. City of Streator,* 113 Ill.App.3d 404, 69 Ill.Dec. 272, 447 N.E.2d 489 (1983)).

**PORTION OF ORDER DECLARING DR. ARTHUR KOBRINE RESPONSIBLE FOR REASONABLE EXPENSES FOR REMOVAL OF RIP–RAP REVERSED. JUDGMENTS OTHERWISE AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**